IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEVIN MCFADDEN, DAVID SCHMIDT,
and PETER DONCEVIC on behalf of
themselves and all others similarly
situated,

              Plaintiffs,

v.

SPRINT COMMUNICATIONS, LLC, the
SPRINT COMMUNICATIONS
EMPLOYEE BENEFITS COMMITTEE,
and JOHN/JANE DOES 1-5,

              Defendants.

Case No. 22-2464-DDC-GEB

## MEMORANDUM AND ORDER

Plaintiffs Kevin McFadden, David Schmidt, and Peter Doncevic, on behalf of themselves and all others similarly situated, bring this action against defendants Sprint Communications, LLC, the Sprint Communications Employee Benefits Committee, and the Committee's individual members (John/Jane Does 1–5). Plaintiffs allege that defendants violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, by failing to pay retirement benefit amounts that satisfy the actuarial equivalence requirements of ERISA.

This matter comes before the court on plaintiffs' Unopposed Motion for Order for Preliminary Approval of Settlement (Doc. 37). Plaintiffs' motion asks the court to (1) preliminarily certify the settlement class, (2) preliminarily approve the proposed settlement, (3) approve the proposed form and method of notice, and (4) schedule a hearing date for final settlement approval. Doc. 37 at 1. For the following reasons, the court grants plaintiffs' request

to certify a settlement class preliminarily and to approve the proposed settlement preliminarily under Rule 23.  The court also grants approval of the form and method of notice and schedules a hearing date to consider final approval of the Settlement.  The court explains these rulings, below.

## I.      Background

Plaintiff Kevin McFadden worked for Sprint for over 26 years and began receiving benefits under the Sprint Retirement Pension Plan (the Plan) in 2017.  Doc. 10 at 5 (First Am. Compl. ¶ 16).  Plaintiff David Schmidt worked for Sprint for 45 years and began receiving his Plan benefits in 2022.  *Id.* at 6 (First Am. Compl. ¶ 17).  And plaintiff Peter Doncevic worked for Sprint for 19 years and began receiving his Plan benefits in 2021.  *Id.* (First Am. Compl. ¶ 18). All three plaintiffs receive joint and survivor annuity (JSA) benefits—with their spouses as beneficiaries—rather than single life annuity (SLA) benefits.[1]  *Id.* at 5–6 (First Am. Compl. ¶¶ 16–18).

On January 18, 2023, plaintiffs filed a Corrected First Amended Class Action Complaint. Doc. 10.  The Complaint alleges that defendants failed to pay plaintiffs (and others similarly situated) JSA benefits under the Plan in amounts meeting ERISA's actuarial equivalence requirements.  *Id.* at 1 (First Am. Compl. ¶ 1).  Plaintiffs contend defendants have caused—and will continue to cause—retirees to lose part of their vested retirement benefits, violating ERISA, because defendants' JSA benefit payments weren't actuarially equivalent to the SLA benefits offered to Plan participants.  *Id.*  That is, plaintiffs allege the Plan calculated unreasonably low

---

[1]      "'JSA' means a 'joint and survivor annuity,' *i.e.*, a monthly annuity for the life of the participant with a monthly survivor annuity (following the participant's death) for the life of the participant's beneficiary (if the beneficiary survives the participant)[.]"  Doc. 38-1 at 20 (Settlement Agreement ¶ I.GG.).  "'SLA' means a 'single life annuity,' *i.e.*, a monthly annuity for the life of an individual, with no benefit payable following that individual's death."  *Id.* at 22 (Settlement Agreement ¶ I.XX.).

JSAs—not actuarially equivalent to the amount of the SLA benefit—because it utilized outdated mortality and interest rates, and an unreasonable 7-year setback period. *Id.* at 17–20 (First Am. Compl. ¶¶ 55–57, 61–65). And these improperly reduced JSAs, plaintiffs assert, violate ERISA § 205(d), 29 U.S.C. § 1055(d), and produce a forfeiture of benefits for participants and beneficiaries of the Plan—violating ERISA § 203(a), 29 U.S.C. § 1053(a). *Id.* at 27 (First Am. Compl. ¶¶ 88–89).

Defendants' Answer, filed on February 1, 2023, denied that defendants violated ERISA and denied plaintiffs' characterization of the JSAs as actuarially inequivalent to the SLA benefit. Doc. 16 at 2, 27–30, 41. And defendants asserted 23 affirmative defenses. *Id.* at 47–50.

On September 6, 2023, the parties participated in mediation and reached an agreement in principle to settle at the ADR session. Doc. 35 at 1. The parties now ask the court to approve the resulting Settlement Agreement preliminarily, after certifying preliminarily the settlement class.

## II.     Rule 23 Certification

The court begins its analysis with Rule 23 certification. Then it turns to Rule 23 settlement approval. Next it addresses notice, then the settlement schedule before turning to objections, the stay order, use of this Order and other provisions.

### A.     Legal Standard

"Class action settlements are premised upon the validity of the underlying class certification." *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004). Class certification is appropriate if the district court finds, after conducting a "rigorous analysis," that the proposed class satisfies the requirements of Fed. R. Civ. P. 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (citation and internal quotation marks omitted). The elements

of class certification are (1) numerosity, (2) commonality, (3) typicality, and (4) adequate

representation, plus one of the requirements of Rule 23(b)(1) through (3).  Fed. R. Civ. P. 23.

Plaintiffs seek certification under Rule 23(b)(1).  Doc. 38 at 16.  Rule 23(b)(1)(A)

requires plaintiffs to show that "prosecuting separate actions by or against individual class

members would create a risk of . . . inconsistent or varying adjudications with respect to

individual class members that would establish incompatible standards of conduct for the party

opposing the class[.]"

### B.    Analysis

Here plaintiffs ask the court to certify preliminarily the following settlement class:

> All participants and beneficiaries of the Plan who began receiving a 50%, 75% or
> 100% JSA or a QPSA on or after November 11, 2016, through and including the
> Preliminary Approval Date whose benefits had a present value that was less than
> the present value of the SLA they were offered using the applicable Treasury
> Assumptions as of each participant's Benefit Commencement Date.  Excluded from
> the Class are Defendants and any individuals who are subsequently determined to
> be fiduciaries of the Plan.

Doc. 38 at 4; Doc. 38-1 at 17 (Settlement Agreement ¶ I.J.).  And, plaintiffs assert, this class

satisfies all the Rule 23 class action certification requirements.  Doc. 38 at 8.  The court

addresses each Rule 23 requirement, below.

### 1.    Numerosity

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all

members is impracticable."  Numerosity "requires examination of the specific facts of each case

and imposes no absolute limitations."  *In re Motor Fuel Temperature Sales Practices Litig.*, 292

F.R.D. 652, 667 (D. Kan. 2013).  A plaintiff seeking class certification "must produce some

evidence or otherwise establish by reasonable estimate the number of class members who may be

involved."  *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504 (D. Kan. 2014).

Here, plaintiffs allege the numerosity element is met because the Plan's records indicate a total of 1,009 class members.  Doc. 38 at 10.  Plaintiffs cite the general rule that classes of 40 or more are presumptively numerous.  *Id.* at 12 (first citing 1 *Newberg on Class Actions* § 3:12 (5th ed.); then citing *Whitton v. Deffenbaugh Indus., Inc.*, Nos. 12-cv-02247, 13-cv-2634, 2016 WL 4493570, at *4 (D. Kan. Aug. 26, 2016)).  In *Nieberding*, this court found that plaintiffs had satisfied the numerosity requirement, when the parties stipulated 233 persons belonged to the class.  *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 608 (D. Kan. 2014).  More than one thousand class members easily qualifies as too numerous to make joinder practicable. The proposed class thus meets the numerosity requirement.

### 2.    Commonality

Rule 23(a)(2) requires plaintiffs to show "questions of law or fact common to the class." Commonality requires plaintiffs "to demonstrate that the class members have suffered the same injury."  *Dukes*, 564 U.S. at 350 (citation and internal quotation marks omitted).  In other words, the "claims must depend upon a common contention" that is "of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.*  (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 NYU L. REV. 97, 132 (2009)).

Plaintiffs allege that the class shares common questions of both law and fact.  Doc. 38 at 12–13.  Plaintiffs assert that the common factual questions revolve around how the Plan should determine JSA benefits to ensure actuarial equivalence to SLA benefits.  *Id.* at 13.  And plaintiffs

identify common questions of law including: (1) whether ERISA requires actuarially equivalent benefits; and (2) whether the Plan's fiduciaries breached their fiduciary duties in authorizing the JSA benefits payments. *Id.* The allegedly improper means of calculating the JSA benefits is a common issue for all members of the putative class. And a common answer deciding whether the Plan's formulas unreasonably reduced class members pensions will resolve this issue for the entire class—that is, "in one stroke." *Dukes*, 564 U.S. at 350. The court concludes that these questions satisfy the commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires the claims of plaintiffs to be typical of the class they seek to represent. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). The typicality test asks whether "all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Id.* at 1199. Plaintiffs allege that representative plaintiffs Kevin McFadden, David Schmidt, and Peter Doncevic's claims typify the claims of the other class members because they arise from the same alleged course of conduct by defendants—using the Plan's outdated formulas to calculate JSAs. Doc. 38 at 14. And also the claims rest on the same legal theory—defendants violated ERISA. *Id.* Here, plaintiffs' legal and remedial theories are the same as those of the putative class, so plaintiffs satisfy the typicality requirement.

### 4. Adequacy of Representation

Rule 23(a)(4) requires named plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Determining adequacy of representation turns on two questions: (1) "whether the named plaintiffs and their counsel have any conflicts of interest with other class members" and (2) whether the named plaintiffs and their counsel will

prosecute the action vigorously on behalf of the class.  *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. at 671.  "Minor conflicts among class members do not defeat certification; to defeat class certification, a conflict must be 'fundamental' and go to specific issues in controversy."  *Id.* (quoting *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010) (further citations omitted)).  "A fundamental conflict exists where some class members claim to have been harmed by conduct which resulted in benefit to other class members."  *Id.*

Here, plaintiffs assert the named plaintiffs meet this adequacy of representation test because they have taken an active role in the case by reviewing the Complaint before filing, responding to discovery requests, and communicating about the case's status.  Doc. 38 at 15. The named plaintiffs are members of the class and sustained the same alleged injuries as class members.  Counsels' respective resumes suggest they will prosecute the action vigorously on behalf of the class.  National counsel has demonstrated an impressive track record in ERISA actions.  According to the firm's resume, courts have appointed Izard, Kindall & Raabe, LLP as sole or co-lead counsel in 49 ERISA actions around the country.  Doc. 38-1 at 61 (Izard Decl. Ex. B).  Local counsel's history prosecuting ERISA class actions also evinces expertise.  Doc. 38-2 at 4 (Nehrbass Decl. ¶¶ 15–19).  The court thus finds the representative parties satisfy the adequacy requirement.

### 5.    Rule 23(b)(1) Requirement

In addition to the requirements under Rule 23(a), a plaintiff must demonstrate affirmatively that the class satisfies the requirements for one of the types of class actions listed in Rule 23(b).  Here, plaintiffs seek class certification under Rule 23(b)(1)(A).  To certify a class under that provision, plaintiffs must show that "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with

respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]"  Fed. R. Civ. P. 23(b)(1)(A).  Rule 23(b)(1) cases include those "where the party is obliged by law to treat the members of the class alike[.]"  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation and internal quotation marks omitted).

Courts have certified ERISA class actions under Rule 23(b)(1), finding that "different outcomes may result if each retiree separately adjudicates his or her claim[.]"  *Temme v. Bemis Co.*, No. 08-CV-090, 2009 WL 1505120, at *6 (E.D. Wis. May 28, 2009).  And if different outcomes resulted, "[d]efendants would face a conflict between treating Plan participants alike and complying with each separate court order."  *Caufield v. Colgate-Palmolive Co.*, No. 16-CIV-4170, 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017).  So, the "language of subdivision (b)(1)(A), addressing the risk of inconsistent adjudications, speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike."  *Id.* (citation and internal quotation marks omitted).  Indeed, "[m]ost ERISA class action cases are certified under Rule 23(b)(1)."  *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008).

This case presents the same kind of concerns.  If class members here must pursue separate claims, those separate, serial actions could produce contradictory obligations.  And such an outcome is particularly troubling in the ERISA context given that the statute requires like treatment of the class.  The court thus finds that class certification under Rule 23(b)(1)(A) is appropriate.  And the court grants the plaintiffs' motion for class certification for settlement purposes.

The court's preliminary certification of the settlement class is without prejudice to, or waiver of the rights of, defendants to contest certification of the proposed class in this action.

The court's findings shall have no effect on the court's ruling on any motion to certify any class in this action, and no party may cite or refer to the court's certification of the settlement class as persuasive or binding authority for any motion to certify any such class. The findings are limited to this particular Order and are made only in the context of this particular settlement.

### III.   Rule 23 Preliminary Settlement Approval

Plaintiffs request that the court enter an order granting preliminary approval of the proposed settlement. The court finds that the proposed settlement is "fair, reasonable, and adequate" under Rule 23 for the reasons explained below. Fed. R. Civ. P. 23(e)(2).

#### A.   Legal Standard

Under Rule 23(e), parties may settle the claims of a certified class action only with court approval. The court may approve a settlement only upon finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Tenth Circuit has specified four factors that a district court must consider when assessing whether a proposed settlement is "fair, reasonable, and adequate":

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The settlement approval process typically occurs in two phases. First, the court considers whether preliminary approval of the settlement is appropriate. 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:10 (6th ed. 2023); *Freebird, Inc. v. Merit Energy*

*Co.*, No. 10-1154, 2012 WL 6085135, at \*4 (D. Kan. Dec. 6, 2012).  "If the Court grants

preliminary approval, it directs notice to class members and sets a hearing at which it will make a

final determination on the fairness of the class settlement."  *In re Motor Fuel Temperature Sales*

*Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012); *see also Newberg and Rubenstein on Class*

*Actions* § 13:10 ("[T]he court's primary objective [at the preliminary approval stage] is to

establish whether to direct notice of the proposed settlement to the class, invite the class's

reaction, and schedule a final fairness hearing.").  Second, "taking account of all of the

information learned during [the preliminary approval] process, the court decides whether to give

'final approval' to the settlement."  *Newberg and Rubenstein on Class Actions* § 13:10.

      Because preliminary approval is just the first step of the approval process, courts apply a

"less stringent" standard than that at final approval.  *Freebird*, 2012 WL 6085135, at \*5.

"[D]istrict courts have developed a jurisprudence whereby they undertake some review of the

settlement at preliminary approval, but perhaps just enough to ensure that sending notice to the

class is not a complete waste of time."  *Newberg and Rubenstein on Class Actions* § 13:10.  "The

general rule is that a court will grant preliminary approval where the proposed settlement is

neither illegal nor collusive and is within the range of possible approval."  *Id.* (internal citation

omitted).  "While the Court will consider [the Tenth Circuit's] factors in depth at the final

approval hearing, they are a useful guide at the preliminary approval stage as well."  *In re Motor*

*Fuel Temperature Sales Practices Litig.*, 286 F.R.D. at 502–03.

      **B.**    **Analysis**

      After analyzing the Tenth Circuit's factors[2] under the relaxed standard that is appropriate

at the preliminary approval stage, the court finds that all four factors favor approval of the

---

[2]      The court acknowledges the 2018 amendment to Rule 23(e)(2) which provides factors for courts to consider in determining whether a class-action settlement is fair, reasonable, and adequate for

settlement proposed here.  *See Rutter & Wilbanks Corp.*, 314 F.3d at 1188 (noting the four Tenth

Circuit factors to consider when evaluating a class action settlement).

> *First*, the court concludes that the parties fairly and honestly negotiated the settlement.

The parties arrived at the settlement after mediating the case with mediator Robert Meyer.  The

parties' Joint Notice of Mediator describes Mr. Meyer as "an experienced mediator with an

expertise in complex ERISA cases like this one."  Doc. 29 at 1.  Before the mediation, the parties

already had exchanged initial disclosures, interrogatories, requests for production, and had

produced "substantial amounts of data that would permit the calculation of alleged damages to

the Class."  Doc. 38-1 at 15 (Settlement Agreement ¶ E.).  Thus, when negotiating the settlement,

both parties knew their strengths and weaknesses, and could weigh the benefits of settling.  And,

engaging a mediator suggests fair and honest negotiations at a minimum.  So, this factor favors

preliminary approval.

> *Second*, the court finds that serious questions of law and fact exist, placing the ultimate

outcome of the litigation in doubt.  Plaintiffs' counsel asserts that their "legal theory has not been

litigated through trial in any case to date, there are no appellate decisions directly on point, and

only one other case involving the same claims has resulted in a class-wide settlement."  Doc. 38

at 5.  Not only is the legal theory novel, but the case turns on which set of actuarial assumptions

---

preliminary approval. Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.  The Advisory
Committee notes explain that the amendment didn't intend "to displace any factor" a circuit has
developed to address the question of a settlement's preliminary approval. *Id.*  And the notes clarify that
concern about a circuit's list of factors arises when they factors are particularly numerous ("a dozen or
more separately articulated factors") so that the "sheer number of factors can distract both the court and
the parties from the central concerns that bear on review under Rule 23(e)(2)." *Id.*  But the Tenth Circuit
factors don't present this concern—there are only four.  And the "Tenth Circuit's additional factors
largely overlap, with only the fourth factor not being subsumed into the new Rule 23." *Chavez Rodriguez
v. Hermes Landscaping, Inc.*, No. 17-2142, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).  So, while
using one set of factors over another might prove important in a heavily litigated approval, for the
unopposed motion here, it's a distinction without difference.  The court, consistent with its prior
preliminary approvals, thus consults the Tenth Circuit factors.

is appropriate to calculate the retiree benefits—a dispute necessarily settled by "a battle of the experts in a highly technical field." *Id.* In sum, if this case proceeded to trial, doubt about the ultimate outcome would accompany the case all the way to trial. This factor favors preliminary approval.

*Third*, the court finds that the value of an immediate recovery outweighs the potential for future relief after protracted and expensive litigation. Plaintiffs' expert opined that "the injured class members had aggregate damages with a present value of $9,707,764 as of September 6, 2023." Doc. 38-1 at 4 (Izard Decl. ¶ 10). So, the proposed settlement, with a present value of $3.5 million, represents "36% of classwide damages" as calculated by plaintiffs' expert. *Id.* The cost of potentially lengthy and extensive litigation—exacerbated by the "battle of the experts" likely required to produce an outcome here, Doc. 38 at 5—outweighs any potential relief that plaintiffs could gain from further pursuing this lawsuit.

*Fourth*, the parties acknowledge in the Settlement Agreement that the negotiated outcome is fair and reasonable. Doc. 38-1 at 16 (Settlement Agreement). The agreement of the parties, and the notice plan that would provide potential class members an opportunity to object to the settlement terms, suggests the agreement is a fair and reasonable one.

For these reasons the court finds that all four of the Tenth Circuit's factors favor preliminary approval. Therefore, the court grants preliminary approval of the proposed Settlement Agreement under Rule 23.

## IV. Notice

### A. Legal Standard

Having approved the Settlement Agreement preliminarily, the court next considers the content, form, and manner of notice that the parties propose to have the Claim Administrator

send to class members.  As part of Rule 23's settlement approval process, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  That is, "Rule 23(e) *requires* that (b)(1) class members receive notice of any *proposed settlement*[.]"  2 *Newberg & Rubenstein on Class Actions* § 4:4 (6th ed. 2023) (emphasis in original).  And "Rule 23(h) *requires* that (b)(1) class members receive notice of any *claim for attorney's fees* award."  *Id.* (emphasis in original).  Such notice provides class members in (b)(1) cases with "the opportunity to object to—or voice their concerns about—the terms of the settlement and/or to the attorney's fees."  *Id.*

### B.    Analysis

The court must review and decide whether to approve the content, form, and manner of notice proposed by the parties.  On reviewing the content and form of the notice proposed here, the court finds that it "clearly and concisely inform[s] class members of the nature of the action, the definition of the class, [and] the class claims."  *Seawell v. Konza Prairie Pizza, Inc.*, No. 20-CV-2130, 2021 WL 3771690, at *5 (D. Kan. Aug. 25, 2021).  And the notice uses "plain, easily understood language[.]"  *Freebird*, 2012 WL 6085135, at *6.  The court also has reviewed the conditions for filing objections, Doc. 38-1 at 48–49 (Izard Decl. Ex. 2), and finds none "unreasonably onerous," *Freebird*, 2012 WL 6085135, at *7 (holding that restrictions on filing objections "seem to be designed to discourage class members from filing objections" when requiring in-person attendance at the fairness hearing, a list of dates for objector deposition, and notary public acknowledgement of objector's signature, among other things).  The court discusses in more detail the procedure for filing objections, below.

And, finally, the manner of notice:  Here, the parties agree that defendants will provide individual notice to the class members within 45 days after entry of this Order by regular mail.

Doc. 38-1 at 23 (Settlement Agreement ¶ II.B.2–3.).  Because all class members currently receive benefits, "the parties expect no difficulty in locating Class Members for purposes of notice or distribution of the re-calculated benefits."  *Id.* at 8 (Izard Decl. ¶ 21).  And defendants "will use or cause commercially reasonable means to be used to find a current address and re-send the Notice" when a notice is undeliverable.  *Id.* at 24 (Settlement Agreement ¶ II.B.3.).

The court thus approves the proposed notice, substantially in the form attached to the Settlement Agreement as Exhibit 2.  *Id.* at 43–49 (Izard Decl. Ex. 2).  Defendants must cause the notice to be sent by regular mail to each known class member's last known address—as maintained in the Plan's records—no later than 45 days after entry of this Order.  And defendants must file with the court proof of transmission of the notice seven days before the Final Approval Hearing.

## V.      Settlement Schedule

Next, plaintiffs propose that the following schedule govern notice, objections filed by class members, and the motion for final approval.  Finding the proposed schedule reasonable, the court approves and adopts it, as set out below.  The Final Approval Hearing shall take place before United States District Judge Daniel Crabtree August 8, 2024, at 3:00 p.m. in Courtroom 476 of the United States District Court for the District of Kansas, 500 State Avenue, Kansas City, KS 66101.  The court reserves the right to alter the time or the date of the Final Approval Hearing, as well as whether the Hearing will take place in person or by videoconference, without further written notice to the class, provided, however, that the court will not conduct the Final Approval Hearing at an earlier time and date than the one specified above.

| Event | Deadline |
|---|---|
| Deadline for mailing Notice to Class members | 45 days after entry of Preliminary Approval Order |

| Motion[s] for, and memoranda in support of (i) Final Approval of Settlement and (ii) Attorneys' Fees and Costs | 45 days before the Final Approval Hearing |
| Last day for objections to the Settlement to be filed with the court and sent to counsel | 28 days before Final Approval Hearing |
| Parties file responses to any filed objections and any other reply briefs in support of Final Approval and Attorneys' Fees and Costs | 7 days before Final Approval Hearing |
| Final Approval Hearing | August 8, 2024, at 3:00 p.m. |

## VI.    Objections to Settlement

Any member of the class may file an objection to the fairness, reasonableness, or adequacy of the settlement, to any term of the Settlement Agreement, to the proposed award of attorneys' fees and costs, or to the request for a client contribution award for plaintiff.  Any objection must comply with all criteria specified in the notice.  An objector must file with the court a statement of his, her, or its objection(s), specifying the reason(s) for each such objection made, including any legal support and/or evidence that the objector wishes to bring to the court's attention or introduce in support of the objection(s).  Any member of the class who files an objection to the Settlement Agreement must also mail copies of the objection and any supporting law and/or evidence to class counsel and counsel for defendants.  The addresses for filing objections with the court and serving objections on counsel are as follows:

For Filing:

      Clerk of the Court
      United States District Court for the District of Kansas
      500 State Ave.
      Kansas City, KS 66101
      Re: *McFadden v. Sprint Communications, LLC*, No. 2:22-cv-2464-DDC-GEB

To Class Counsel:

      Christopher Barrett
      IZARD, KINDALL & RAABE LLP

29 S. Main Street, Suite 305
West Hartford, CT 06107
Email: cbarrett@ikrlaw.com

<u>To Defendants' Counsel</u>:

Blake Crohan
ALSTON & BIRD, LLP
1201 W. Peachtree Street NE
Atlanta, GA 30309
Email: blake.crohan@alston.com

Objectors and their private counsel (if any) must file and serve their objections and supporting papers so that they are received by the court and counsel no later than twenty-eight (28) days before the Final Approval Hearing. They may serve counsel by email, but must file their objections and supporting papers with the court by first-class mail (or use other equally expeditious means). If objectors hire an attorney for the purpose of making an objection, the attorney must also file a notice of appearance with the court no later than twenty-eight (28) days before the Final Approval Hearing and serve a copy of the notice of appearance on the counsel listed above by email or regular mail on the same day that it is filed with the court. Any member of the class who does not timely submit a written objection complying with the terms of this Order may be deemed to have waived, and may be foreclosed from raising, any objection to the settlement, and any untimely objection may be barred. Any responses to objections must be filed with the court no later than seven (7) days before the Final Approval Hearing. The court will not accept reply briefs.

Any objector who files and serves a timely, written objection may also appear at the Final Approval Hearing, either for themselves or through qualified counsel retained at the objector's expense. Objectors or their attorneys intending to appear at the Final Approval Hearing must file a notice of intention to appear (and, if applicable, the name, address, and telephone number of the objector's attorney) with the court no later than twenty-eight (28) days before the Final

16

Approval Hearing.  Any objector who does not timely submit a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Final Approval Hearing, except for good cause shown.

## VII.   Stay Order

The court imposes a stay of the pending litigation in the action and enjoins the initiation of any new litigation by any class member in any court, arbitration, or other tribunal that includes any released claims against defendants or any of their respective related parties, as defined in the Settlement Agreement.  Doc. 38-1 at 21–22 (Settlement Agreement ¶¶ I.SS., TT.).

## VIII.   Use of Order

This Order is not admissible as evidence in any pending or future litigation for any purpose.  This Order shall not be construed or used as an admission, concession, or declaration by or against defendants of any finding of fiduciary status, fault, wrongdoing, breach, liability, or any other wrongdoing.  This Order shall not be construed or used as an admission, concession, or declaration by or against plaintiffs or the class that their claims lack merit, or that the relief requested in the action is inappropriate, improper, or unavailable.  This Order shall not be construed or used as an admission, concession, declaration, or waiver by any party of any arguments, defenses, or claims that he, she, or it may have in the event that the Settlement Agreement terminates.  Moreover, the Settlement Agreement and any proceedings taken pursuant to the Settlement Agreement are for settlement purposes only.  Neither the fact of, nor any provision contained in the Settlement Agreement or its exhibits or appendices, nor actions taken thereunder shall be construed as, offered into evidence as, received into evidence as, and/or deemed to be evidence of, a presumption, concession, or admission of any kind as to

the truth of any fact alleged or validity of any defense (including, but not limited to, class or collective certification) that has been, could have been, or in the future might be asserted.

## IX.    Other Provisions

In the event that the settlement does not become effective in accordance with the terms of the Settlement Agreement, this Order becomes null and void to the extent provided by and in accordance with the Agreement and shall be vacated (except as to paragraphs 5, 6, 18), and in such event, all orders entered and releases delivered in connection therewith shall be null and void to the extent provided by and in accordance with the Settlement, and without prejudice to the rights to the parties to the Agreement before it was executed.  Notwithstanding the foregoing, and for the avoidance of doubt, the effectiveness of the Settlement Agreement is not contingent upon the court approving the attorneys' fees and costs and/or any client contribution award request by plaintiffs and/or class counsel.

The court retains jurisdiction to consider all further applications arising out of or connected with the settlement.

## X.    Conclusion

For reasons explained above, the court preliminarily certifies the proposed settlement class and preliminarily approves the parties' Settlement Agreement.  The court directs defendants to cause the notice to be sent in the form and manner the parties proposed and adopts the plaintiffs' schedule for related deadlines.

**IT IS THEREFORE ORDERED THAT** plaintiffs' Unopposed Motion for Preliminary Settlement Approval (Doc. 37) is granted.

**IT IS SO ORDERED.**

**Dated this 8th day of April, 2024, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**