# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| Kevin McFadden, David Schmidt and Peter Doncevic on behalf of himself and all others similarly situated, | Case No.: 2:22-cv-2464-DDC-GEB |
| Plaintiffs, | |
| vs. | |
| Sprint Communications, LLC, the Sprint Communications Employee Benefits Committee and John/Jane Does 1-5, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION (1) FOR FINAL APPROVAL OF CLASS SETTLEMENT AND (2) FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND COSTS, AND SERVICE AWARDS**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

III.   PROCEDURAL BACKGROUND ....................................................................... 3

III.   SETTLEMENT TERMS ...................................................................................... 4

     A.    The Class. ................................................................................................. 4

     B.    Increased Benefit Payments. ................................................................... 5

     C.    Timing of Benefit Increase. ..................................................................... 6

     D.    QDROs. .................................................................................................... 6

     E.    Calculation of Benefits Upon the Death of a Participant Class Member. .............. 6

     F.    Plan Amendments. ................................................................................... 7

     G.    Release. .................................................................................................... 7

     H.    Identification of Class Members. ............................................................. 7

     I.     Notice and Administration. ...................................................................... 7

     J.    Attorneys' Fees and Expenses.. ............................................................... 8

     K.    Service Award. ........................................................................................ 8

IV.   ARGUMENT ....................................................................................................... 8

     A.    The Proposed Class Is Suitable for Certification, and the Court Should Certify the Class for Settlement Purposes. ................................ 8

          1.    The Proposed Class Satisfies Rule 23(a). ................................... 9

               a.    Numerosity. ..................................................................... 9

               b.    Commonality. ................................................................... 9

               c.    Typicality ........................................................................ 11

               d.    Adequacy ....................................................................... 112

          2.    The Proposed Class Satisfies Rule 23(b)(1). ............................. 13

     B.    IKR and Foulston Will Fairly and Adequately Represent the Interests of the Class, and the Court Should Appoint the Firms as Class Counsel. ................. 14

          1.    Counsel's Work in this Case .................................................... 15

2. Counsel's Experience....................................................................... 15

3. Counsel's Knowledge of the Law............................................... 16

4. Counsel's Resources .................................................................. 16

C. Standard And Process for Approval .................................................. 16

D. The Proposed Settlement Should Be Approved................................. 18

1. The Class Representatives and Proposed Class Counsel Have Adequately Represented the Class............................................... 18

2. The Proposed Settlement Was Negotiated at Arm's Length ................... 19

3. The Relief Provided for The Class Is More Than Adequate. .................. 20

a. The Costs, Risks, and Delay of Trial and Appeal......................... 22

b. The Effectiveness of Distribution to The Settlement Class.......... 24

c. The Terms of Any Proposed Award of Attorneys' Fees, Including Timing Of Payment ...................................... 25

E. The Requested Attorneys' Fees Award Is Reasonable Under the *Johnson* Factors............................................................................ 27

1. Factor 8: The Amount Involved and the Results Obtained...................... 27

2. Factors 5 and 12: The Customary Fee and Awards in Similar Cases....... 28

3. Contingent Fee Arrangement (Factor 6) and Desirability (Factor 10). .... 30

4. Novelty and Difficulty (Factor 2); Skill (Factor 3); and Experience (Factor 9)............................................................................... 31

5. Factor 1: Time and Labor Required........................................... 32

6. Factor 4: Preclusion of Other Employment Due to Accepting the Case............................................................................ 32

7. The Settlement Treats Class Members Equitably Relative to Each Other. ................................................................................... 32

8. Award of Litigation Expenses ................................................. 33

9. Service Awards to Plaintiffs Should be Approved ................................. 33

9. The Notice to Class Members Is Adequate................................... 34

V. CONCLUSION................................................................................ 36

Plaintiffs Kevin McFadden, David Schmidt and Peter Doncevic, individually and as proposed Class Representatives, move for an order (1) granting final approval of the Settlement between Plaintiffs and Defendants (collectively "Sprint"); (2) certifying a Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1)(A); (3) appointing Plaintiffs as Class Representatives; (4) appointing Izard, Kindall & Raabe, LLP and Foulston Siefkin LLP ("Foulston") as Class Counsel; and (5) granting an award of attorneys' fees of $1,666,667, reimbursement of expenses and costs, and a service award to each Plaintiff.[1]  In support of this Memorandum, Plaintiffs submit the Declaration of its lead counsel, Mr. Robert A. Izard, along with exhibits to Mr. Izard's Declaration (including the Settlement Agreement itself); the previously filed Declaration of its local counsel, Mr. Scott C. Nehrbass (ECF No. 38-2); and Declarations from each of the Plaintiffs.

## I.    INTRODUCTION

The proposed Settlement is an excellent result for the Class, with a present value of $3.5 million, or approximately 36% of classwide damages as calculated by Plaintiffs' actuarial expert as of September 2023.  The Settlement will increase the amount that Class Members are receiving in their monthly pension checks — a benefit that will continue for the rest of their lives and the lives of their beneficiaries.

The Employee Retirement Income Security Act of 1974 ("ERISA") requires that pension benefits in the form of a Joint and Survivor Annuity ("JSA") (which provides benefits for the life of the participant and beneficiary) or a Pre-Retirement Survivor Annuity ("PSA") (which provides survivor benefits to a retiree's beneficiary) be "actuarially equivalent" to the single-life annuity ("SLA") offered to the participant.  This case is about whether the Sprint Retirement Pension Plan

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

1

(the "Plan") complied with those requirements.  Plaintiffs contend that Sprint shortchanged retirees and beneficiaries receiving JSAs and PSAs and that retiree and beneficiary monthly pension checks should be higher.

The value of the proposed settlement must be considered in light of the substantial litigation risks in this cutting-edge and complex case. Plaintiffs' legal theory has not been litigated through trial in any case to date, there are no appellate decisions directly on point, and only one other case involving the same claims has resulted in a class-wide settlement. Plaintiffs' ability to prevail in this case hinges on which actuarial assumptions are used to measure retiree benefits.  Defendants vigorously disputed the actuarial assumptions selected by Plaintiffs' expert. Accordingly, success at trial would depend on Plaintiffs winning a battle of experts in a highly technical field. For these reasons and others discussed in more detail below, the Settlement satisfies the criteria for final approval, and Plaintiffs request that the Court grant this motion.

## II.    FACTUAL BACKGROUND

The actuarial assumptions used to calculate present values for determining actuarial equivalence involve mortality and interest rates. A mortality assumption estimates how many benefit payments will be made, based on the ages of the participant and (in the case of JSAs) the beneficiary.  An interest rate assumption discounts the value of expected future payments to a present value. When payments under one benefit option are likely to extend longer than those under another, the benefit amount under the first option will be lower to account for the likelihood that more payments will be made. For example, the amount of a JSA benefit will be lower than the amount of an SLA benefit to account for the possibility that the beneficiary will receive benefits after the participant's death.  But the present values of those two forms of benefits must be the same to be actuarially equivalent.

2

On November 11, 2022, Plaintiff Kevin McFadden filed a class action complaint in the United States District Court for the District of Kansas asserting various claims for relief under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") on behalf of a putative class of certain participants and beneficiaries in the Sprint Retirement Pension Plan (the "Plan"). ECF No. 1.  Plaintiffs alleged in the Complaint that Sprint calculated his JSA benefit (and the JSAs and PSAs of other Class Members) using outdated mortality and interest rate assumptions which caused his monthly benefit to be less than an "actuarially equivalent" amount.  *Id.* ¶¶ 65.  In other words, the present values of Class Members' JSA and PSA benefits were less than the present values of the SLAs they could have taken instead; the present values of the two benefit types would have been equal had Defendants used mortality and interest rate assumptions that were reasonable as of the date Class Members began to receive their benefits.

## III.   PROCEDURAL BACKGROUND

On January 17, 2023, Plaintiffs filed their Corrected First Amended Complaint. ECF No. 10.  In this Complaint, Plaintiffs challenged the actuarial assumptions used by the Plan to convert Single Life Annuities into alternative forms of payment, including Joint and Survivor Annuities and Pre-Retirement Survivor Annuities. On February 1, 2023, Defendants filed their Answer and Affirmative Defenses to the First Amended Complaint.  ECF No. 16.

On February 6, 2023, the Court entered its Initial Order Regarding Planning and Scheduling. ECF. No. 17. On March 16, 2023, the Court entered a Phased Scheduling Order ("Scheduling Order"), ECF No. 23.

In accordance with the Scheduling Order, the Parties engaged in fact discovery, including exchanging initial disclosures and documents, propounding and responding to interrogatories and requests for production of documents, and producing data that would permit the calculation of

alleged damages to the Class.

In accordance with the Scheduling Order, the Parties filed a Joint Notice of Mediator in which they identified Robert Meyer as an experienced ERISA mediator who would attempt to mediate this case. ECF No. 29.

In advance of mediation, Plaintiffs retained an actuarial expert who opined that the actuarial assumptions used by the Plan to convert SLAs into JSAs did not result in JSA benefits that were actuarially equivalent to the SLAs Class Members could have selected at retirement. Plaintiffs' expert opined that, to provide an actuarially equivalent benefit, the Plan should have used actuarial assumptions concerning mortality and interest rates that were reasonable as of Class Members' annuity start dates. Plaintiffs' expert also opined on actuarial assumptions that would have been reasonable for each year during the Class Period. Finally, Plaintiffs' expert calculated putative Class Member damages.

In accordance with the Scheduling Order, the Parties mediated with Mr. Meyer on September 6, 2023, during which the Parties reached an agreement in principle with respect to the amount of the Settlement and other key issues related to the structure of a Settlement Agreement.

On November 30, 2023, Plaintiffs filed a Motion for Preliminary Approval of the Settlement. ECF. No. 37. On April 9, 2024, the Court granted the Motion for Preliminary Approval. ECF. No. 39.

## III.   SETTLEMENT TERMS

The full Settlement Agreement is attached to the Declaration of Robert A. Izard ("Izard Decl.") as Exhibit A. The material terms of the Agreement are summarized below:

**A.    The Class.**    The proposed Settlement Class is defined as: All participants and beneficiaries of the Plan who began receiving a 50%, 75% or 100% JSA or a QPSA on or after

November 11, 2016, through and including the Preliminary Approval Date whose benefits had a present value that was less than the present value of the SLA they were offered using the applicable Treasury Assumptions as of each participant's Benefit Commencement Date. Excluded from the Class are Defendants and any individuals who are subsequently determined to be fiduciaries of the Plan.

      **B.    Increased Benefit Payments**.  The Settlement provides that the Plan will be amended, and the monthly benefit of each participant who began receiving a benefit in the form of a JSA, and the monthly benefit of each beneficiary who began receiving the survivor benefits of a PSA, will be increased.  The amount of the increase will be calculated to allocate the present value of the Net Settlement Amount (the total amount of the Settlement, less amounts approved by the court for payment of fees, expenses and the client contribution award) to Class Members and/or their Associated Beneficiaries in proportion to the total value of their past and future pension benefit payments. The benefit increase for each Class Member and/or beneficiary will be based on the following steps:

      (1) calculate the total amount of benefits paid to each Class Member and/or his or her Associated Participant, plus interest at 5.43% annually from the date each benefit was paid, from the beginning of the Class Period until January 1, 2024 (the "Past Benefit Amount");

      (2) calculate the actuarially equivalent amount of the Past Benefit Amount if paid as a monthly benefit in the same form (*e.g.*, a 50 or 75% JSA) as the Class Member is currently receiving using the Annuitization Assumptions (the "Adjusted Past Benefit");

      (3) The Monthly Benefit Increase is the Settlement Percentage multiplied by the sum of (a) the Adjusted Past Benefit and (b) the Currently Monthly Benefit. The Settlement Percentage is calculated by dividing the Net Settlement Amount by the sum of (i) the Past Benefit Amounts of

all Deceased Class Members, (ii) the present value as of January 1, 2024 of the Adjusted Past Benefits for all Class Members and/or Associated Participants (other than Deceased Class Members), and (iii) the present value of all future benefit payments owed to Class Members (before the increase contemplated by this Agreement) as of January 1, 2024 (with (ii) and (iii) calculated using the Settlement Assumptions).

C.    **Timing of Benefit Increase.**  The Settlement Amendment shall provide that any increase in benefits on account of the Settlement Amendment shall begin to be paid no later than the first day of the first calendar month that is at least one hundred and twenty (120) days after Final Approval (the "Benefit Increase Payment Date"), and shall include a lump sum equal to the sum of such increases in monthly payments due from January 1, 2024, until the Benefit Increase Payment Date (provided that no interest is required for such period).

D.    **QDROs.**  Notwithstanding the foregoing, the amount actually payable to a Class Member following approval of the settlement is subject to the terms of any Qualified Domestic Relations Order ("QDRO") with respect to division of benefits between the Participant and the QDRO's alternate payee.

E.    **Calculation of Benefits Upon the Death of a Participant Class Member.**  Upon the death of a Participant Class Member, the amount of the survivor annuity payable to the Participant Class Members' beneficiary, if any, shall be determined using the Class Members' Recalculated Benefit Amount in a manner consistent with the terms of the Covered Plan. Upon the completion and return of an Estate Claim Form attached to the Settlement Agreement as Exhibit 1 ("Estate Claim Form"), the Covered Plan shall pay the estate of a Deceased Class Member (the participant or beneficiary, whichever is most recently deceased) a lump sum amount equal to the Class Member's Past Benefit Amount multiplied by the Settlement Percentage.  The Claim form

6

must be returned to Defendants by no later than six months from the date of Final Approval.

**F.      Plan Amendments.**  Effective upon final approval of the Settlement, the Plan shall be amended to provide for payment of benefit increases to Class Members.

**G.      Release.**      Upon entry of the Judgment by the Court, Plaintiffs and each Settlement Class Member shall be deemed to forever release and discharge the Released Parties from any and all Claims arising on or before April 9, 2024 that were brought, or could have been brought, arising out of, or relating to, the allegations in the Complaint.  For the avoidance of doubt, a Claim arises on or before April 9, 2024 if a Class Member's benefit amount is determined as of April 9, 2024 or earlier, even as to monthly payments made after April 9, 2024.  "Released Claims" do not include claims by Class Members (other than Plaintiffs) that are not or could not be related to the allegations in the Complaint.

**H.      Identification of Class Members.**  Class Members can be identified using the Plan's records. The Plan's records indicate that there are 1,009 Class Members.

**I.      Notice and Administration.**  Defendants agreed to pay for and provided notice to the Class and to governmental entities required under the Class Action Fairness Act ("CAFA"). Notice was transmitted to Class Members by regular mail to the address that is maintained in Sprint's records. Because all Class Members are currently receiving benefits, the parties expect no difficulty in locating Class Members for purposes of notice or distribution of the re-calculated benefits.

The Class Notice (Settlement Agreement Ex. 2) informed Class Members about the nature of the Action, the terms of the Settlement, and the procedures for entering an appearance to be heard or to object to the Settlement. In addition, key court documents, including the Complaint, the Settlement Agreement, preliminary approval papers, Plaintiffs' Motion for Final Approval of

Class Settlement and for an Award of Attorneys' Fees, Reimbursement of Expenses and Costs, and Service Awards and pertinent Court Orders have been or will be posted on a Settlement Website. For notices that are returned as undeliverable, Defendants engaged in commercially reasonable means to find a current address and re-send the Notice.

J.   **Attorneys' Fees and Expenses.**   The Settlement Agreement provides that proposed Class Counsel Izard, Kindall & Raabe, LLP ("IKR") and Foulston Siefkin LLP ("Foulston"), will request that this Court award attorneys' fees of up to 33 $^1$/$_3$% of the present value of the Settlement, plus expert and other litigation expenses and costs subject to Court approval. The Parties estimate that the present value of the Settlement is $3.5 million. The Settlement expressly provides that the Settlement is not conditioned upon the Court approving the requested amounts for fees, expenses, or the Service Award.  Furthermore, the Settlement Agreement does not contain a "clear sailing" provision; Defendants are entitled to object to the request for attorneys' fees, costs, and expenses.

K.   **Service Award.**  The Settlement Agreement provides that proposed Class Counsel intends to request that this Court award a Service Award to Plaintiffs of up to $5,000, subject to Court approval. That amount will reduce the present value of the Settlement amount to be paid to Class Members in the form of annuity payments.

IV.   **ARGUMENT**

A.   **The Proposed Class Is Suitable for Certification, and the Court Should Certify the Class for Settlement Purposes.**

Plaintiffs request, and Defendants do not oppose, that the Class be certified for settlement purposes. To be certified, the proposed Class must satisfy the requirements of Rule 23(a), as well as at least one of Rule 23(b)'s subparts. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

### 1.    The Proposed Class Satisfies Rule 23(a).

Rule 23(a) sets forth four threshold requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. The proposed Class satisfies each of these requirements for purposes of settlement.

#### a.    Numerosity

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As a general rule, classes of 40 or more are presumptively numerous. 1 Newberg on Class Actions § 3:12 (5th ed.); *Whitton v. Deffenbaugh Indus., Inc.*, Nos. 12-cv-02247, 13-cv-2634, 2016 WL 4493570, at *4 (D. Kan. Aug. 26, 2016) (approving Newberg's instruction that classes of 40 or more are presumptively numerous).

Here, there are over 1,000 Class Members. Numerosity is satisfied for purposes of settlement.

#### b.    Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists where the class claims rely on a common contention capable of class-wide resolution. *Dukes*, 564 U.S. at 350. In other words, commonality exists if a class-question generates "common *answers*." *Id.; accord Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019).

Here, the central issue is whether Class Members' JSA benefits are actuarially equivalent to the SLAs they were offered. Determining whether the Plan's formulas used for participants unreasonably reduced their pensions will resolve this central issue for the entire Class. ERISA requires the use of actuarial assumptions that are "reasonable" in the aggregate when determining if a JSA is actuarially equivalent. *See, e.g.*, 26 C.F.R. § 1.401(a)-11(b)(2). This case will determine what those "reasonable" actuarial assumptions should be and will resolve the claims

9

that the JSAs being received by Plaintiffs and all Class Members violate ERISA's actuarial equivalence requirement. Each Class member's particular circumstances (*e.g.*, normal form of benefit, age at retirement, etc.) will not affect what actuarial assumptions should be used to determine if they are receiving an actuarially equivalent benefit and thus should have their benefit increased. *See*, *e.g.*, *Lacy v. Cook County, Illinois*, 897 F.3d 847, 866–67 (7th Cir. 2018) (finding that "commonality abounds" when class members "complain about the same failure to implement and enforce policies" under the ADA).

Plaintiffs raise core ***factual*** questions that drive this litigation and that have common answers for all Class Members, which include:

- Which conversion factors should be used to determine whether JSA benefits are actuarially equivalent to the SLA offered to participants when they start receiving benefits?

- Do the Covered Plans use proper conversion factors to determine whether JSA benefits are actuarially equivalent to the SLA offered to participants when they start receiving benefits?

- Do the Covered Plans provide participants with actuarially equivalent benefits when they start receiving benefits?

Plaintiffs also raise ***legal*** questions that have common answers for all Class Members, including:

- Whether ERISA requires that JSA benefits be actuarially equivalent to the SLA offered to participants when they start receiving benefits?

- Whether the Plan's fiduciaries breached their fiduciary duties by authorizing the payment of JSA benefits that were not actuarially equivalent to Class Members' SLAs?

- Whether Class Members are entitled to have their future benefit payments re-calculated using reasonable conversion factors?

10

- Whether Class Members are entitled to be paid the shortfall between what they have received as pension benefit payments and what they would have received if their JSA benefits were actuarially equivalent?

In sum, all Class Members' claims turn on common legal and factual questions. Proof of each of these issues will necessarily be proof for the entire Class because it goes to how Defendants calculated pension benefits for all Class Members and whether those benefits satisfy ERISA's actuarial equivalence requirement. This satisfies Rule 23's commonality requirement. *Godfrey v. GreatBanc Trust Co.*, No. 18-cv-7918, 2021 WL 679068, * 6 (N.D. Ill. Feb. 21, 2021) (finding that "whether the defendants are liable under . . . ERISA" presented common questions, the answers to which "will resolve an issue central to the validity of each one of the claims in one stroke.") (citing *Dukes*, 564 U.S. at 359); *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 255 F.R.D. 628, 629 (W.D. Wisc. 2009) (certifying class in ERISA case because "the central issue is . . . whether defendant's method for determining the value of [class members' benefits] was illegal."). Accordingly, commonality is satisfied for purposes of settlement.

### c.    Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "interests and claims of [the named plaintiffs] and class members need not be identical to satisfy typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) (citation omitted). Where the claims of the named plaintiffs "and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198–99 (citation omitted).

Here, the Class Representatives' claims are typical of those of the Class because they stem from the Plan's outdated formulas used to calculate JSAs for participants in the Plan and the

comparison of the conversion factors generated by the Plan's formulas to those generated by reasonable actuarial assumptions. The claims arising from these core facts are based on the same legal theory—that Defendants violated ERISA § 205(d).  *Temme v. Bemis Co.*, No. 08-cv-090, 2009 WL 1505120, at * 5 (E.D. Wis. May 28, 2009) (typicality satisfied in ERISA case because the claims "arise from the same conduct [involving a] reduction in benefits. . . .and based on the same legal theory. . . ."). Moreover, Plaintiffs and the proposed Class seek the same remedies: declaratory and injunctive relief under ERISA § 502(a)(3), declaring that Defendants violated ERISA and increasing their future pension benefits.  Compl. ¶¶ 83–102.  Accordingly, Rule 23(a)(3)'s typicality requirement is satisfied.

### d.    Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A named plaintiff is an adequate class representative when he is a member of the class, his interests do not conflict with those of other class members, and he can prosecute the action vigorously through competent counsel. *In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 263, 282 (D. Kan. 2010).

Here, Plaintiffs easily satisfy Rule 23's adequacy requirement.  They have been involved in this case at each step, reviewing the Complaint and other relevant documents before the case was filed, responding to Defendants' discovery requests and regularly communicating with Class Counsel about the case's status.

Finally, courts ask will "counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  IKR's track record speaks for itself. IKR has served and is serving as class counsel in dozens of ERISA class actions around the country, including several other lawsuits involving ERISA's actuarial

equivalence requirements. Its work has been praised by courts throughout the country. Izard Decl., Ex. B (IKR firm resume). It has pioneered this sub-category of ERISA class litigation, having obtained favorable opinions in most of the cases in this area of law.[2] Accordingly, IKR is uniquely positioned to represent the best interests of the Class given their extensive experience.

Foulston is the largest law firm in Kansas, with over one hundred years of successful experience litigating in the Kansas federal and state courts and is recognized as a top-tier litigation firm. Foulston has extensive experience litigating class actions and other complex cases (including several similar ERISA class actions in the Kansas City area federal courts), and its attorneys are recognized as knowledgeable in this area of the law. (ECF No. 38-2, Declaration of Scott C. Nehrbass of Foulston Siefkin LLP, in support of Motion for Preliminary Approval.)

Because Plaintiffs and counsel are adequate, the "adequacy of representation" factor of Rule 23(a)(4) is met.

### 2. The Proposed Class Satisfies Rule 23(b)(1).

Having satisfied all the requirements of Rule 23(a), the Class needs only to satisfy one subsection of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, the proposed Class may be certified under Rule 23(b)(1).

Rule 23(b)(1)(A) is satisfied where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party

---

[2] *See, e.g.*, *Matsen v. Metropolitan Life Insurance Company,* 543 F. Supp. 3d 25 (S.D.N.Y. 2021) (motion to dismiss); *Belknap v. Partners Healthcare Sys., Inc.,* No. 19-11437-FDS, 2020 WL 4506162 (D. Mass. Aug. 5, 2020) (same); *Smith v. Rockwell Automation, Inc.,* 438 F. Supp. 3d 912 (E.D. Wis. 2020) (same); *Duffy v. Anheuser-Busch Companies, LLC,* 449 F. Supp. 3d 882 (E.D. Mo. 2020) (same); *Smith v. U.S. Bancorp,* No. 18-3405, 2019 WL 2644204, at *1 (D. Minn. June 27, 2019) (same); *Torres v. Am. Airlines, Inc.,* 416 F. Supp. 3d 640 (N.D. Tex. 2019) (same).

opposing the class." Fed. R. Civ. P. 23(b)(1)(A). The rule is designed for cases "where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614 (citation omitted). Because ERISA protects against the risk of differential treatment of class members by fiduciaries, courts regularly certify ERISA cases under 23(b)(1). *See, e.g.*, *Temme*, 2009 WL 1505120, at * 6; *see also Caufield v. Colgate-Palmolive Co.*, No. 16-cv-4170, 2017 WL 3206339, at * 6 (S.D.N.Y. July 27, 2017) ("Most ERISA class actions are certified under Rule 23(b)(1)"); *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213, 2011 WL 3505264, at *15 (C.D. Cal. Mar. 29, 2011).

This is true here. If the Court were not to certify a class, hundreds of class members would be left to raise separate claims and Defendants would face "a risk of 'inconsistent or varying adjudications"—including "contradictory rulings" about how to determine if Class Members received actuarially equivalent benefits. Rule 23(b)(1)(A) is designed to address this exact issue. *Temme*, 2009 WL 1501520, at * 6 (certifying a (b)(1) class because the "[defendant] may win in some cases and lose in others, generating contradictory obligations with regard to required coverage."); *Mezyk v. U.S. Bank Pension Plan*, No. 3:09-cv-384, 2011 WL 601653, at *9 (S.D. Ill. Feb. 11, 2011) (certifying class of ERISA participants under (b)(1)(A) because the case would "establish one single standard of conduct" regarding pension benefits for class members).

**B.    IKR and Foulston Have Fairly and Adequately Represented the Interests of the Class, and the Court Should Appoint the Firms as Class Counsel.**

When a court certifies a class, it must also appoint class counsel who will represent the interests of the class fairly and adequately. Fed. R. Civ. P. 23(c)(1)(B), (g)(1). In doing so, courts must consider the following factors:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex

14

litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs request that the Court appoint IKR and Foulston as Class Counsel for the certified Settlement Class, and all four factors weigh in favor of granting their request.

### 1.    Counsel's Work in this Case

IKR and Foulston have expended significant work identifying and investigating the claims in this action and then litigating them. Counsel conducted initial meetings with Plaintiffs; requested that they procure documents related to their participation in the Plan; searched for and procured publicly available documents regarding the Plan; reviewed and analyzed Plan documents and the data they contained; researched claims; drafted and filed the Complaint and Corrected First Amended Complaint; exchanged initial disclosures, propounded and responded to interrogatories and requests for production of documents, reviewed substantial amounts of documents and data that would permit the calculation of alleged damages to the Class; worked with an expert to prepare detailed and comprehensive damages analyses; meticulously prepared for settlement negotiations; attended mediation sessions that resulted in the proposed Settlement; and prepared the documents and took the other steps necessary to seek the Court's approval and otherwise implement the Settlement. See, Izard Decl.

### 2.    Counsel's Experience

As discussed in Part IV.A.1.d., *supra*, IKR and Foulston have significant experience in handling class actions and other complex ERISA litigation, including the types of claims asserted in this case.

15

### 3.    Counsel's Knowledge of the Law

As discussed in Part IV.A.1.d., *supra*, IKR and Foulston have extensive knowledge of the law surrounding ERISA litigation, including the types of claims asserted in this case.

### 4.    Counsel's Resources

IKR has been lead counsel in over 40 class actions and had successful results. Izard Decl., Ex. B (IKR firm resume). And the Foulston firm likewise has extensive and recent experience shepherding ERISA class action settlements in area federal courts against some of the largest Kansas City area employers. (ECF No. 38-2, Nehrbass Declaration.)

In summary, consistent with Rules 23(c)(1) and 23(g), and considering IKR's and Foulston's work in the case, experience, knowledge of the law, and resources, the Court should appoint IKR and Foulston as Class Counsel.

## C.    Standard and Process for Approval

"The law favors compromise and settlement of class action suits." *Geiger v. Sisters of Charity of Leavenworth Health Sys., Inc.*, No. 14-cv-2378, 2015 WL 4523806, at *2 (D. Kan. July 27, 2015) (citations omitted). However, before approving a settlement, the Court must find that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The approval process typically takes place in two phases. In the first phase, "the court considers whether the proposed settlement is 'fair, reasonable, and adequate,' and if it is, the court preliminarily approves the settlement." *Bailes v. Lineage Logistics, LLC*, No. 15-CV-02457-DDC-TJJ, 2016 WL 4415356, at *4 (D. Kan. Aug. 19, 2016) citation omitted). "If the [c]ourt grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement." *In re Motor FuelTemperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (citation omitted). In the second phase, "the court entertains any objections, considers whether the settlement is 'fair, reasonable, and

16

adequate,' and either denies or approves the settlement." *Bailes*, 2016 WL 4415356, at *4 (quoting

Fed. R. Civ. P. 23). When determining whether the settlement is fair, reasonable, and adequate,

the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)    the costs, risks, and delay of trial and appeal;
>>
>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)   any agreement required to be identified under Rule 23(e)(3)[3]; and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before these considerations were added to Rule 23(e) in 2018, the Tenth Circuit directed

that the following four factors (often called the *Jones* factors) be considered in determining

whether a settlement is fair, reasonable, and adequate:

> (1)    whether the proposed settlement was fairly and honestly negotiated;
>
> (2)    whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3)    whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4)    whether the parties believe the settlement is fair and reasonable.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

---

[3] There are no agreements subject to this Rule other than the Settlement Agreement.

Although the Advisory Committee's note to the 2018 amendment to Rule 23(e)(2) states that the "goal of th[e] amendment is not to displace any factor" courts had previously considered, it also suggests that these new Rule 23(e)(2) factors are in fact meant to take the place of the various tests adopted by the circuits. Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment. The Tenth Circuit has not yet provided guidance on the continuing validity of the *Jones* factors. However, given that three of the four *Jones* factors overlap with the Rule 23(e)(2) factors, District Courts in this Circuit, including one in this District, have simply applied the Rule 23(e)(2) factors while noting that, in doing so, they were still addressing the *Jones* factors. *See*, *e.g.*, *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No.17-cv-2142, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020); *Peace Officers Annuity & Benefit Fund of Ga. v. Davita, Inc.*, No. 17-cv-0304, 2021 WL 1387110, at *3 (D. Colo. Apr. 13, 2021); *Cisneros v. EP Wrap-It Insulation, LLC*, No. 19-cv-500, 2021 WL 2953117, at *6 (D.N.M. July 14, 2021).

As set forth below, all of the Rule 23(e)(2) factors are satisfied here.

**D.    The Proposed Settlement Should Be Approved**

Consideration of all relevant factors demonstrates that the Settlement is likely to be finally approved under Rule 23(e)(2) and should therefore be approved.

**1.    The Class Representatives and Proposed Class Counsel Have Adequately Represented the Class.**

As discussed in Part IV.A.1.d. and Part IV.B. above, Plaintiffs and Class Counsel have fairly and adequately represented the Class for purposes of Rule 23(a)(4), (c)(1), and (g). Accordingly, the first Rule 23(e)(2) consideration weighs in favor of approving the Proposed Settlement. *See Chavez Rodriguez*, 2020 WL 3288059, at *2 ("Courts have analyzed the adequacy of representation by evaluating adequacy under Rule 23(a)(4)." (citations omitted)).

## 2.    The Proposed Settlement Was Negotiated at Arm's Length.

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. A settlement is fairly negotiated at arm's length if it is "the product of serious, informed, non-collusive negotiations." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. at 492. A class settlement is initially presumed fair and reasonable when it "is reached by experienced counsel after negotiations in an adversarial setting." *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

Here, the case was thoroughly litigated. As discussed above, Counsel conducted initial meetings with Plaintiffs; requested that they procure documents related to their participation in the Plan; searched for and procured publicly available documents regarding the Plan; reviewed and analyzed Plan documents and the data they contained; researched claims; drafted and filed the Complaint and First Amended Complaint; exchanged initial disclosures, propounded and responded to interrogatories and requests for production of documents, reviewed substantial amounts of documents and data that would permit the calculation of alleged damages to the Class; worked with an expert to prepare detailed and comprehensive damages analyses; meticulously prepared for settlement negotiations; attended mediation sessions that resulted in the proposed Settlement; and prepared the documents and took the other steps necessary to seek the Court's approval and otherwise implement the Settlement.

Moreover, the settlement process itself took place over several months and was mediated by Mr. Meyer, who is experienced in mediating ERISA actions and was intimately familiar with the claims, the defenses, and the work of the Parties' respective expert witnesses. Izard Decl. ¶¶ 8-11; *see Eubank v. Pella Corp.*, 2019 WL 1227832, at *3 (N.D. Ill. Mar. 15, 2019); *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *3 (S.D. Ill. Dec. 16, 2018); *In re China Med.*

*Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014).

The extent of this litigation, the hard-fought negotiations between experienced attorneys for both sides, the use of a neutral mediator, and the excellent result for the Settlement Class are all testaments to the non-collusive nature of the settlement. Accordingly, this factor weighs in favor of approval. *See, e.g.*, *McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *1, *2 (N.D. Ill. Mar. 6, 2015); *Ziegler v. Dale*, No. 18-CV-71-SWS, 2021 WL 8999336, at *4 (D. Wyo. Oct. 22, 2021) ("Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable." (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006))); *see also Tripp v. Rabin*, 2016 WL 3615572, at *3 (D. Kan. July 6, 2016) ("The contested nature of this suit, the engagement of a neutral mediator, and the extensive negotiation process constitute evidence that the parties negotiated the settlement agreement fairly and honestly.").

### 3.    The Relief Provided for The Class Is More Than Adequate.

The third Rule 23(e)(2) factor requires the Court to consider several subfactors when determining whether the proposed settlement offers adequate relief for the class:

> (i)    the costs, risks, and delay of trial and appeal;
>
> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)   any agreement required to be identified under Rule 23(e)(3)

Fed. R. Civ. P. 23(e)(2)(C). These subfactors support the adequacy of the proposed Settlement.

The key question — whether the benefits provided to Class Members during the Class period were less than the actuarial equivalent of the SLAs that they could have selected — is one that can only be determined at trial through expert testimony. Accordingly, this case was a "battle

of experts," and the results of such battles are notoriously difficult to predict.

The proposed Settlement is an excellent result for the Class, with a present value of $3.5 million, or approximately 36% of classwide damages as calculated by Plaintiffs' actuarial expert. This is an outstanding result in light of the likelihood of further lengthy, expensive litigation and the risk that the Class would recover less — or possibly nothing at all. ERISA class settlements involving statutory claims that have been litigated much more frequently (and, thus, have more of a track-record) often settle for lower percentages of plaintiffs' asserted damages. *See, e.g.*, *Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, ECF No. 95 at 10 (D. Mass. Mar. 24, 2021), *approved* ECF No. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, ECF No. 211 (S.D.N.Y. May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (approving settlement of 16% of alleged losses); *Velazquez v. Massachusetts Fin. Services Co.*, No. 17-11249, ECF No.. 108 (D. Mass Dec. 5, 2019) (approving settlement for 29% of maximum damages); *Prince v. Eaton Vance Corp.*, No. 18-12098, ECF No. 57 (D. Mass Sept. 24, 2019) (approving settlement for 23% of total damages); *Sims v. BB&T Corp.*, No. 15-732, 2019 WL 1993519, *2 (M.D.N.C. May 6, 2019) ($24 million settlement representing 19% of alleged damages); *Urakhchin v. Allianz Asset Mgmt. of Amer., L.P.*, No. 15-1614, 2018 WL 8334858, *4 (C.D. Cal. July 30, 2018) ($12 million settlement representing 17.7% of maximum alleged damages); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under Plaintiffs' highest model); *Urakhchin v. Allianz Asset Mgmt. of Amer., L.P.*, No. 15-1614, 2018 WL 8334858, at *4 (C.D. Cal. July 30, 2018) ($12 million settlement representing 17.7% of maximum alleged damages).

The proposed Settlement provides meaningful, immediate, and continuing benefits to the

Settlement Class, while avoiding potentially years more of costs and delays, and the risks inherent in all class action litigation if the case were to go to trial.

Finally, as of this date, no Class Member has objected to the settlement, further confirming the adequacy of representation.

### a.    The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the court to consider the adequacy of class relief in light of the costs, risks, and delay of trial and appeal. ERISA retirement plan cases are complex, expensive, and often lead to lengthy litigation. *Krueger v. Ameriprise*, No. 11-cv-02781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015).[4] While delay is a risk in all litigation, it is a particularly serious risk in a case that involves retirees in their 60s and 70s. ERISA class actions concerning novel theories of liability like this one tend to have significant life-cycles even after trial. For example, in *Tussey v. ABB, Inc*., the first ERISA fiduciary breach class action trial was conducted in January, 2010. *See Tussey v. ABB, Inc*., 746 F.3d 327 (8th Cir. 2014). The participants received a trial verdict in 2012, saw that verdict reduced by the court of appeals in 2014, and eventually settled in 2019 — a *decade* after trial. *See Tussey v. ABB, Inc*., 850 F.3d 951 (8th Cir. 2017) (remanding on damages); *Tussey v. ABB, Inc*., No. 06-4305, ECF No. 869 (W.D. Mo. Aug. 16, 2019) (granting final approval of settlement). *See also*, *e.g.*, *Spano v. Boeing Co.*, 2016 WL 3791123, at *1, 4 (N.D. Ill. Mar. 31,

---

[4] *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138–39 (S.D.N.Y. 2010) (recognizing the complexity of ERISA fiduciary duty cases); *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778, 2011 WL 1230826, at *7 (N.D. Cal. Apr. 1, 2011) (noting the expense, delay, and risks of expert challenges and damage calculations support settlement approval); *In re NVIDIA Corp. Deriv. Litig.*, No. 06-cv-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("[E]ven a favorable judgment at trial may face post-trial motions and . . . the amount of recoverable damages is uncertain."); *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-cv-1113, 2016 WL 6542707, at *9 (D. Conn. Nov. 3, 2016) (finding complex damages analysis weighs in favor of class settlement); *Abbott v. Lockheed Martin Corp.*, No. 06-cv-701, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting ERISA 401(k) cases are "particularly complex").

2016) (9 years); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015) (8.5 years); *Beesley v. Intl' Paper Co.*, No. 3:06-cv-00703, ECF No. 559 (S.D. Ill. Jan. 31, 2014) (more than 7 years). Such delays significantly harm class members already in retirement. In contrast, if this Settlement is approved, the Class will begin receiving higher monthly pension payments now, instead of years later if the case were ultimately successful after trial.

The litigation risks in the case are also high. Plaintiffs and Sprint have vastly different views about Sprint's potential liability and the likely outcome of the litigation. Plaintiffs' core allegations regarding actuarial equivalence are entirely untested on the merits. The key question — whether the benefits provided to Class Members during the Class period were less than the actuarial equivalent of the SLAs that they could have selected — is one that can only be determined at trial through expert testimony. Plaintiffs and Sprint would each proffer actuarial experts that would provide radically different opinions on this issue. The results of such battles are notoriously difficult to predict. *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 667 (E.D. Va. 2001. And, even if the Court credited only *parts* of Defendants' expert testimony, it could reduce or eliminate altogether the damages that could be awarded.

The existence of significant questions of law and fact,[5] the near certainty of protracted litigation, and the associated considerations of costs, risks, and delays, demonstrate the adequacy and reasonableness of the Settlement. *See Hershey v. ExxonMobil Oil Corp.*, No. 07-cv-1300, 2012 WL 5306260, at *1–2 (D. Kan. Oct. 26, 2012) (noting class settlements are presumptively favored because "the value of an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation" (citations omitted)); *Kruger v. Novant Health, Inc.*, No. 14-

---

[5] *See Chavez Rodriguez*, 2020 WL 3288059, at *3 (explaining that the "serious-questions" *Jones* factor "largely overlap[s] and can be subsumed under" Rule 23(e)(2)(C)(i)).

cv-208, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (granting final approval, noting "early settlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways"); *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 13-cv-172, 2016 WL 5394684, *7 (D. Neb. Sept. 27, 2016) (approving settlement because it provided "a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal").

Ultimately, if approved by the Court, Class Members will receive a significant percentage of the total possible recovery as calculated by Plaintiffs' expert without the burden and risks of further litigation. This "adequate relief" factor of Rule 23(e)(2)(C) weighs in favor of approval.

**b.      The Effectiveness of Distribution to The Settlement Class**

The Advisory Committee's Notes to the 2018 amendments to Rule 23(e) indicate that "[m]easuring the proposed relief may require evaluation of any proposed claims process. . . ." Here, no such process is needed.[6] The Settlement Agreement will, if approved, increase Class Members' future monthly benefit payments without the need for Class Members to file claims or have those claims reviewed by a Claims Administrator. Moreover, many people have their benefit checks deposited directly, and those who do not have a strong incentive to ensure that the Plan has their current address information, so that they can receive and promptly cash their benefits checks. Thus, the increase in monthly benefits will result in the efficient and effective distribution of the Settlement's benefits.

The Settlement is non-reversionary. The calculation revisions were extensively negotiated

---

[6] The one exception is where both the Plan Participant Class Member and his or her Associated Beneficiary have both passed away before increase benefits under the Settlement are set to commence.  The Settlement provides that Defendants will send notice of the Settlement to the last known address of the person who was receiving benefits, and a payout will be made to the estate or heirs upon receipt of an Estate Claim Form.

between the Parties and the payments pursuant to that resolution will be made automatically and fully over the course of the Class Members' lives, ensuring that none of the settlement will be returned to Sprint.

Finally, Class Members are receiving a distribution in the same form in which they were harmed; a reduction in benefits is being remedied by an increase in benefits. Accordingly, the method of distribution matches the claims alleged.[7]   Each Class Member's recovery will be based on the same percentage of the total value of their past and future benefits.  Pro rata distributions to the Class are typical and appropriate.

**c.      The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment**

Rule 23(e)(2)(C)(iii) directs the Court to consider, as part of its evaluation of the fairness of the Settlement, provisions related to payment of attorneys' fees, including the timing of the payment. The Advisory Committee's Notes on the 2018 Amendment indicates that "[u]ltimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award."

Under Rule 23, when counsel obtain a settlement for a class, courts "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988); *see also* Fed. R. Civ. P. 23(h). Here, the requested fee is reasonable and is authorized both by the Settlement Agreement, and by applicable law.

---

[7] Moreover, Class Members will not be responsible for a large tax payment on a lump sum award.

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re EpiPen (Epinephrine Injection ,USP) Marketing, Sales Practices and Antitrust Litigation*, 2022 WL 2663873 (D. Kan. July 11,2022) \*4. Likewise, "reasonable expenses of litigation" may be recovered from a common fund. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970); *EpiPen,* 2022 WL 2663873 at \* 6.

The \$3.5 million present value of the Settlement provides, for purposes of analysis, a "common fund." Under the Settlement, the amount that Defendants pay to Plaintiffs for attorneys' fees, costs, and expenses, as well as the Client Contribution Award, will be subtracted from the present value of the total class-wide Settlement, and each Class Member will receive a share of the value of the Settlement net of these payments. This is the appropriate methodology to use in a common fund case that involves payment of future benefits. *See, e.g.*, *Herndon v. Huntington Ingalls Industries, et al,* No. 4:19CV52 (RCY), ECF Nos. 133, 137 (E.D. Va. May 10, 2022) (Order)(awarding percentage of present value of increased future benefits); *Cruz v. Raytheon*, No. 19-11425 (D. Mass. June 11, 2021) (Final Order and Judgment) (awarding percentage of the present value of increased future benefit payments)*; Kelly v. Johns Hopkins Univ.,* No. 16-CV-2835-GLR, 2020 WL 434473, at \*6 (D. Md. Jan. 28, 2020) (awarding counsel a percentage of the total value of the settlement, including future tax deferral and fee savings that would benefit the Class); *Clark v. Duke Univ.,* No. 16-CV-1044, 2019 WL 2579201, at \*3 (M.D.N.C. June 24, 2019) (same).

The Tenth Circuit favors application of the percentage-of-the-fund method "when determining the award of attorneys fees in common fund cases." *EpiPen,* 2022 WL 2663873 \* 4.

In all cases, the court must consider the factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *EpiPen,* 2022 WL 2663873, at 4. Those 12 factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1269 (D. Kan. 2006) (citation omitted).[8]

### E.    The Requested Attorneys' Fees Award Is Reasonable Under the *Johnson* Factors

#### 1.    Factor 8: The Amount Involved and the Results Obtained

In a common fund case, the eighth *Johnson* factor — the amount involved in the case and the results obtained — is entitled to the most weight. *See Brown*, 838 F.2d at 456.(holding this factor may be given greater weight when "the recovery [is] highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class."); Fed. R. Civ. P. 23(h), adv. comm. note (explaining for a "percentage" or contingency-based approach to class action fee awards, "results achieved is the basic starting point.");  *EpiPen,* 2022 WL 2663873 at * 4.  Here, the results achieved support the $^1/_3$ fee requested.

As discussed in Part IV.D.3. above, the proposed Settlement is an excellent result for the Class, with a present value of $3.5 million, or approximately 36% of classwide damages as calculated by Plaintiffs' actuarial expert.  This is an outstanding result in light of the likelihood of further lengthy, expensive litigation and the risk that the Class would recover less — or possibly

---

[8] Two Johnson factors—time limitations imposed by the client or circumstances (Factor 7) and nature and length of the professional relationship with the client (Factor 11)—are of no or nominal importance in this class action, percentage-of-the-fund fee award. *EpiPen* at * 6.

nothing at all. Therefore, the eighth *Johnson* factor thus weighs in favor of granting Plaintiffs' fee

request.

### 2.    Factors 5 and 12: The Customary Fee and Awards in Similar Cases

"The 'customary fee' factor in a common fund case is the same as the factor suggesting

consideration of awards in similar cases." *Brown*, 838 F.2d at 455. As this Court explained in

*EpiPen*:

> Class actions "typically involve a contingent fee arrangement because it insulates
> the class from the risk of incurring legal fees and shifts that risk to counsel."
> *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan.
> 2015) (citation omitted). Our court consistently has recognized that a "one-third fee
> is customary in contingent-fee cases (factor 5)," *In re Syngenta AG MIR 162 Corn
> Litig.*, 357 F. Supp. 3d 1094, 1113–14 (D. Kan. 2018), and "well within the range
> typically awarded in class actions[,]" *Nieberding*, 129 F. Supp. 3d at 1250. In fact,
> in cases with increased complexity and risk, the fee awards often exceed one-third
> of the common fund secured. *See Nakamura v. Wells Fargo Bank, N.A.*, No. 17-
> 4029-DDC-GEB, 2019 WL 2185081, at *2–3 (D. Kan. May 21, 2019) (citing fee
> awards in the Tenth Circuit based on 40% of the common fund). And in our court,
> an attorneys' fee award of one-third is consistent with fees awarded in comparably
> high-risk, high potential damage, complex class actions resulting in creation of a
> common fund, such as here. *See* Doc. 2613-4 at 2 (Table 1) (listing nine fee awards
> of 33.33% or greater within the District of Kansas for class recoveries ranging from
> $16.9 million to $1.51 billion). The court thus concludes that the requested fee of
> one-third is customary and consistent with awards in similar cases, and thus
> supports a fee award in the amount of one-third of the Settlement Amount.

*EpiPen,* 2022 WL 2663873 at * 5. *See also See Snider v. Administrative Committee, et al.,* No. CIV-

20-977-D (Order and Final Judgment) (W.D. Okl. Aug. 18, 2022) ECF No. 48 at 8 (awarding one

third fee in ERISA class action.)

Moreover, ERISA class litigation is a national market. *See Kelly v. Johns Hopkins Univ.*,

No. 16-2835, 2020 WL 434473, *6 (D. Maryland Jan. 28, 2020) ("As courts have repeatedly

recognized, complex ERISA class action litigation "involves a national market"); *Cates v. Trustees

of Columbia Univ.,* No. 16-6524, 2021 WL 4847890, *3 (S.D.N.Y. Oct. 18, 2021) ("ERISA

litigation involves a national market because the number of plaintiff's firms which have the

necessary expertise and are willing to take the risk and devote the resources to litigate complex claims is small."). *See also* Manual for Complex Litig. (4th ed.) § 14.121 (2004) ("A common fund is itself the measure of success... [and] represents the benchmark from which a reasonable fee will be awarded.").

Class Counsel request a fee of one-third of the Settlement, an amount which Wildmans reasonable and consistent with fees approved in other complex ERISA class actions throughout the country. *Swain v. Wilmington Trust N.A.*, 17-cv-71, D.I. 123 (D. Del.) (same); *Casey v. Reliance Trust Co.*, 18-cv-424, D.I. 176) (E.D. Tex.) (same); *Bilewicz v. FMR Co*., No. 13-10636, 2014 WL 8332137, at *6 (D. Mass. Oct. 16, 2014) (same); *Cates*, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) (same); *Pledger v. Reliance Trust Co*., 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021) (same); *Kelly*, 2020 WL 434473, *3 (awarding one third fee, "the market rate" for complex ERISA class actions); *Sims v. BB&T Corp*., 1:15-732 & 1:15-841, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) ("A one-third fee is consistent with the market rate in complex ERISA matters such as this and reflects a customary fee for like work."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (awarding one third fee in ERISA 401(k) class action); *Stevens v. SEI Investments Co.*, 2020 WL 996418, at *12 (E.D. Pa. Feb. 28, 2020) (awarding one third of settlement fund and citing *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010) (awarding one-third fee)); *In re Schering-Plough Corp. Enhance ERISA Litig*., 2012 WL 1964451, at *1 (D.N.J. May 31, 2012) (awarding one third fee in ERISA case alleging defendants breached their fiduciary duties to Plan, particularly with regard to the Plan's holdings of Schering–Plough stock); *High St. Rehab*., *LLC v. Am. Specialty Health Inc.*, 2019 WL 4140784, at *10 (E.D. Pa. Aug. 29, 2019) (awarding 33% fee in ERISA class action); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2, 4 (D. Minn. July 13, 2015) (awarding one third fee and noting courts have consistently awarded one-third fees

in ERISA breach of fiduciary duty cases); *Spano v. Boeing Co*., 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016); *Will v. Gen. Dynamics Corp*., 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (one-third fee consistent with market rate).

### 3.    Contingent Fee Arrangement (Factor 6) and Desirability (Factor 10).

Contingency fee cases presenting complex or difficult issues are inherently risky and can be considered as undesirable when compared to steady, billable hour work. *See In re Sprint Corp.*, 443 F. Supp. 2d at 1270 (noting that the case was "'undesirable' from the start in the sense that the issues presented were inherently risky"); *Hapka*, 2018 WL 1879845, at *3 (noting that "uncertainty of recovery supports Class Counsel's application for attorneys' fees"). Cases like this one are an excellent illustration of this fact.

The risk involved in taking on this case is underscored by the outcome of the few cases that have gone to trial. For example, Chief Judge Kays of the Western District of Missouri ruled against plaintiffs on all of their claims after an 11-day bench trial over issues similar to the questions presented by this case. *Wildman v. American Century Services, LLC*, 2019 WL 293382, at *19 (W.D. Mo. 2019). And, in another notable case, the District of Massachusetts granted judgment in favor of the defendants, despite noting that the plan's fiduciaries were "no paragon of diligence," because it found that the plaintiffs had "failed to establish a prima facie case of loss." *Brotherston v. Putnam Investments, LLC*, 2017 WL 2634361, at *12 (D. Mass. 2017). The risk demonstrated by these cases is why many courts have acknowledged that "the monetary results to the class will likely ultimately be modest as to each individual class member," but plaintiffs in ERISA cases face "an uphill battle in establishing liability and obtaining [any] financial recovery." *Feinberg v. T. Rowe Price Gr., Inc.*, 610 F. Supp. 3d 758, 771 (D. Md. 2022); *see also Marshall v. Northrop Grunman Corp.*, No. 16-cv-6794, 2020 WL 5668935, at *5

(collecting cases wherein ERISA 401(k) plaintiffs failed to obtain the recovery sought). *See EpiPen,* 2022 WL 2663873 * 5.

### 4. Novelty and Difficulty (Factor 2); Skill (Factor 3); and Experience (Factor 9).

Class actions have "a well deserved reputation as being most complex[,]" *EpiPen,* 2022 WL 2663873 * 6. ERISA litigation is notoriously complex, and the skill required to handle this complexity supports a one-third fee request. *See, e.g.*, *Marshall* 2020 WL 5668935, at *4 (C.D. Cal. Sept. 18, 2020) (explaining that "the transient nature of standing ERISA law . . . require[s] highly skilled counsel"); Order Granting Pls.' Unopposed Mot. Approval Att'ys' Fees, Expenses, & Incentive Awards 5, *Troudt v. Oracle Corp.*, No. 16-cv-00175 (D. Colo. July 10, 2020), ECF No. 236 ("[I] is 'well established that complex ERISA litigation' such as this requires 'special expertise,' and class counsel of the 'the highest caliber.'" (citations omitted)); *Krueger*, 2015 WL 4246879, at *2 (noting, in a similar 401(k) case, that "[f]ew lawyers or law firms are willing and capable of handling the type of national litigation at issue"); *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *2 (M.D.N.C. 2007) ("[I]t takes skilled counsel to manage a nationwide class action, carefully analyze the facts and legal claims and defenses under ERISA, and bring a complex case to the point at which settlement is a realistic possibility."). That Class Counsel efficiently positioned this case for a substantial settlement, while avoiding costly delays often found in ERISA class actions, is a testament to their skill.

Moreover, "[a]dditional skill is required when the opponent is a sophisticated corporation with sophisticated counsel." *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 571–72 (D.S.C. 2015). Here, there is no question that Defendants' counsel is a high-quality and sophisticated law firm with extensive experience defending ERISA class-action lawsuits. This further weighs in favor of granting Plaintiffs' fee request.

### 5. Factor 1: Time and Labor Required

The time and labor factor "has minimal importance in a percentage of the common fund case. " *EpiPen,* 2022 WL 2663873 at * 5. "In fact, a lodestar analysis (or crosscheck) is neither required nor needed to assess reasonableness in a percentage of the fund determination." *Id*.

That being said, as discussed in Part IV.B. above, Plaintiffs' counsel from the Izard law firm have performed substantial work in this case. They have 618 hours through June 24, 2024. See Izard Decl.¶ 39. As of November 15, 2023, the Foulston attorneys had logged over 70 hours as local counsel on the matter. ECF No. 38-2, Nehrbass Decl.

### 6. Factor 4: Preclusion of Other Employment Due to Accepting the Case

When "an attorney is spending time on one case, he is not spending the same time on another case." *Wiggins v. Roberts*, 551 F. Supp. 57, 61 (N.D. Ala. 1982). *EpiPen,* 2022 WL 2663873 * 6. Counsel have dedicated a significant amount of time and labor to this case. The fourth *Johnson* factor thus weighs in favor of granting Plaintiffs' fee request. *See Hapka v. CareCentrix, Inc.*, No. 16-cv-2372, 2018 WL 1879845, at *3 (D. Kan. Feb. 15, 2018).

### 7. The Settlement Treats Class Members Equitably Relative to Each Other.

The Settlement treats Class Members equitably relative to each other. The dollar amount of the benefit that Class Members will receive from the Settlement will vary based on the total present value of their past and future benefit payments.  But, each Class Member will receive the same ***percentage*** of the present value of their benefits.

Although the Settlement only provides a ***prospective*** increase in benefits, it ensures that Class Members who retired at an older age and/or earlier in the Class Period (and thus are likely,

from an actuarial perspective, to have fewer future benefits payments) are treated equitably by including the value of past benefit payments, plus interest, in the calculation for their future benefit increases, giving past payments the same weight in the calculation as the present value of future benefits.

### 8.    Award of Litigation Expenses

Rule 23(h) authorizes courts to reimburse counsel for costs and expenses. Also, the Settlement Agreement authorizes an award of expenses awarded by the Court shall be paid from the Settlement Fund. (Settlement Agreement ¶ 6.4). *See EpiPen,* 2022 WL 2663873 at *6. Plaintiffs' counsel seek an award of expenses of $25,322.31 of the Izard law firm, *see* Izard Decl.¶ 38, and $603.70 of the Foulston Siefkin law firm, *see* ECF No. 38-2, Nehrbass Decl.¶ 23.

### 9.    Service Awards to Plaintiffs Should be Approved

"At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class." *EpiPen,* 2022 WL 2663873 at *6 (citing 5 Newberg on Class Actions § 17:1 (6th ed. 2021)). See *Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV, 2018 WL 2568044, at *7 (D. Kan. June 4, 2018) (citing *UFCW Loc. 880-Retail Food Emp. Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235 (10th Cir. 2009)).

Plaintiffs have been active, hands-on participants in this litigation, expending significant amounts of their own time to benefit the Class. They each joined this Action and remained in frequent contact with Class Counsel. Izard Decl. at ¶¶ 41-42. Their decision to pursue this case as a class action, and not simply seek individual damages, directly benefited the Class. They provided documents related to their involvement in the Plan, reviewed court filings and consulted with counsel when the Settlement was being negotiated. *Id*. They should be compensated for their time and efforts on behalf of the Class, which has benefited greatly from his representation.

Each of the Plaintiffs has submitted herewith a Declaration regarding his personal time and efforts devoted to this case. Plaintiff McFadden has devoted at least 60 hours to this case. McFadden Decl. Plaintiff Schmidt has devoted at least 30 hours. Schmidt Decl. Plaintiff Doncevic has devoted at least 50 hours. Doncevic Decl.

Plaintiffs request that each of them be awarded $5,000. The amounts requested are far less than other awards approved by courts in this Circuit in ERISA and other types of class action cases. *Beesley*, 2014 WL 375432, at *4 (in ERISA case noting "[a]wards of $15,000 to $25,000 for a Named Plaintiff award and total Named Plaintiff awards of less than one percent of the fund are well within the ranges that are typically awarded in comparable cases"); *Cook*, 142 F.3d at 1016 (upholding award of $25,000 to class representative, based on plaintiff's time expended and results obtained for the class); *Heekin*, 2012 WL 5878032, at *1 (approving $25,000 incentive award to lead class plaintiff over objection); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, Dkt. 243 at ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 incentive award to each plaintiff in TCPA class settlement).

### 10. The Notice to Class Members Was Adequate

Class Members are entitled to notice of any proposed settlement and an opportunity to object before it is finally approved by the Court. *See* Manual for Complex Litig. (4th ed.), § 21.31. The Settlement Agreement provides that the Settlement Administrator will provide direct notice of the Settlement Agreement to Class Members via regular mail to each Class Member's last known address provided by the Plan Recordkeeper. Ex. A ¶ 3.5, at 13–14. This type of notice is presumptively reasonable. *See Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1173 (10th Cir. 2016) ("The Supreme Court has consistently endorsed notice by first-class mail."); *accord Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The contents of a class notice vary depending on the facts of each case. However, a few general rules apply. For instance, "[n]otice provided to the class is adequate where it sets forth the formula for distributing the settlement fund among the class members." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1262. "In fact, it is not at all unusual for class members not to know the amounts they will be receiving until after final approval." *Id.* And, under Rule 23(e), a notice is reasonable if it "'fairly apprise[s]' the class members of the terms of the proposed settlement and of their options." *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001).

Here the method of notification was adequate. The Notice was clear and straightforward, providing Class Members with enough information to evaluate whether to object to the Settlement, as well as directions to the Settlement Website which includes further information. Settlement Agreement § II. B.   Sprint has advised that the notice was timely sent according to the Preliminary Approval order on May 24, 2024.  Sprint will submit an affidavit from the Plan consultant, Willis Towers Watson or defense counsel before the final approval hearing with the details on the notice process and any undeliverable mail.  Izard Decl. ¶ 25. Class Members are not required to submit a claim form or take any steps to receive the benefit of the Settlement.[9] The Class Notice was also posted to the Settlement Website. This method of providing notice is adequate under Rule 23(c)(2). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (holding that individual mailed notice clearly describing the case and Class Members' rights meets due process requirements).

---

[9] The only exception is for estates and heirs where both the Class Member Participant and his or her Associated Beneficiary passed away prior to the date when increased benefits commence.  *See* Part III. E.

## V.    CONCLUSION

The proposed class action Settlement Agreement is fair, reasonable, and adequate. For the foregoing reasons, Plaintiffs request that this Court enter an order (1) granting final approval of the Settlement between Plaintiffs and Defendants (collectively "Sprint"); (2) certifying a Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1)(A); (3) appointing Plaintiffs as Class Representatives; (4) appointing Izard, Kindall & Raabe, LLP and Foulston Siefkin LLP as Class Counsel; and (5) granting an award of attorneys' fees, reimbursement of expenses and costs, and award of a service award to each Plaintiff .

Dated:  June 24, 2024                        Respectfully submitted,

s/ Scott C. Nehrbass
FOULSTON SIEFKIN, LLP
Scott C. Nehrbass, KS #16285
snehrbass@foulston.com
7500 College Blvd, Ste 1400
Overland Park, KS 66210
Telephone: 913.253.2144
Facsimile: 913.498.2101

Jeff P. DeGraffenreid, KS #15694
jdegraffenreid@foulston.com
Boyd Byers, KS #16253
bbyers@foulston.com
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
Telephone: 316.291.9788
Facsimile: 316.267.6345

IZARD, KINDALL & RAABE LLP
Robert A. Izard
Christopher M. Barrett
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
rizard@ikrlaw.com
cbarrett@ikrlaw.com

36

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2024, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*s/ Scott C. Nehrbass*
Scott C. Nehrbass