IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEVIN MCFADDEN, DAVID SCHMIDT,
and PETER DONCEVIC on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

v.

SPRINT COMMUNICATIONS, LLC,
SPRINT COMMUNICATIONS
EMPLOYEE BENEFITS COMMITTEE,
and JOHN/JANE DOES 1-5,

        Defendants.

Case No. 22-2464-DDC-GEB

**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, AWARDING
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

This matter comes to the court on plaintiffs Kevin McFadden, David Schmidt, and Peter Doncevic's motion asking the court to: (a) finally approve the Settlement;[1] (b) certify a settlement class under Fed. R. Civ. P. 23(b)(1)(A); (c) appoint plaintiffs as class representatives; (d) appoint Izard, Kindall & Raabe, LLP and Foulston Siefkin LLP as class counsel; and (e) award attorneys' fees, expenses, and service awards to class representatives. Doc. 40.

On April 9, 2024, this court granted preliminary approval of the proposed class action Settlement set forth in the Settlement Agreement. Doc. 39 at 18. The court also approved the procedure for giving class notice to members of the settlement class and set a final approval

---

[1]     This Order incorporates by reference the definitions in the Settlement Agreement dated November 2023 (Doc. 41-2). All capitalized terms used, but not defined, in this Order, have the same meanings used in the Settlement Agreement.

hearing for August 8, 2024. *Id.* at 13–14. The court finds that due and adequate notice was given to the settlement class as required in the court's Order. *See below* ¶ 3.

On August 8, 2024, the court held a duly noticed final approval hearing to consider whether: (1) to certify the settlement class; (2) to find the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate; (3) to enter a judgment dismissing the settlement Class members' released claims with prejudice; and (4) to award attorneys' fees, expenses, and costs to plaintiffs' counsel and service awards to the class representatives, and in what amounts.

The court has considered all papers filed and proceedings conducted in this action and has determined that the Settlement is fair, reasonable, and adequate. So, the court grants the plaintiffs' motion. Doc. 40.

**THE COURT ORDERS, ADJUDGES, AND DECREES** that:

1. The court preliminarily certified the class for settlement purposes on April 9, 2024. Doc. 39 at 18. Under Rule 23 of the Federal Rules of Civil Procedure, the court finally certifies the class, defined as:

> All participants and beneficiaries of the Plan who began receiving a 50%, 75%[,] or 100% JSA or a QPSA[2] on or after November 11, 2016, through and including April 9, 2024 whose benefits had a present value that was less than the present value of the SLA[3] they were offered using the applicable Treasury Assumptions as of each participant's Benefit Commencement Date. Excluded from the Class are Defendants and any individuals who are subsequently determined to be fiduciaries of the Plan.

Doc. 38-1 at 17 (Settlement Agreement ¶ I.J.).

For purposes of effectuating the Settlement, the court finds that the Settlement satisfies the requirements of Rule 23. More specifically, the court finds as follows:

---

[2] The parties define QPSA to mean qualified pre-retirement survivor annuity. Doc. 10 at 7 (Compl. ¶ 25).

[3] The parties define SLA to mean single-life annuity. Doc. 41 at 4.

    a.    Under Rule 23(a)(1), that members of the class are so numerous that their joinder would be impracticable;

    b.    Under Rule 23(a)(2), that plaintiffs have alleged one or more questions of law or fact common to the class;

    c.    Under Rule 23(a)(3), that plaintiffs' claims are typical of the class's claims;

    d.    Under Rule 23(a)(4), that plaintiffs fairly and adequately will protect the interests of the class; and

    e.    Under Rule 23(b)(1)(A), "that prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."[4]

    2.    Class plaintiffs seek final approval of the Settlement.  Rule 23(e) permits parties to settle the claims of a certified class action, but "only with the court's approval."  And, the court may approve a settlement only after conducting a hearing and finding that the settlement is "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  This Rule identifies several factors that courts should consider when making this finding.  They include whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and

---

[4] The court completed a more thorough certification analysis in its Order preliminarily certifying the class.  *See* Doc. 39 at 3–7.  The court reiterates and adopts that analysis here.  Nothing has changed that would affect class certification between entry of that Order and this one.

>   (D) the proposal treats class members equitably relative to each other.

*Id.* Also, the Tenth Circuit has identified four factors that a district court must consider when assessing whether a proposed settlement is fair, reasonable, and adequate:

>   (1) whether the proposed settlement was fairly and honestly negotiated;
>   (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>   (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>   (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). The court previously granted preliminary approval of the Settlement, finding it "fair, reasonable, and adequate" as Fed. R. Civ. P. 23(e) requires. Doc. 39 at 9. Now, the court grants final approval of the Settlement Agreement under this Rule. Class plaintiffs have shown that each of the Rule 23(e)(2) and Tenth Circuit factors are met here, as explained below.

*First*, the court finds that class representatives and class counsel have represented the class adequately. Class representatives share the same interests and alleged injuries as the class. Class representatives were Plan participants allegedly suffering harm because the Plan used outdated formulas in calculating their joint and survivor annuity benefits. Doc. 38 at 14. Like other members of the class, class representatives have an interest in ensuring the best possible remedy to correct the alleged error. What's more, they reviewed documents before class counsel filed the case and consistently participated in discovery throughout the litigation—adequately representing the interests of the class. Class counsel has represented the class adequately by prosecuting their claims vigorously. Their representation involved investigating the claims, searching for and reviewing publicly available documents pertinent to the Sprint Retirement Pension Plan, drafting the Complaint and Corrected First Amended Complaint, engaging in and reviewing written discovery, working with an expert to assess class-wide damages, preparing for

and attending mediated settlement negotiations, and preparing the documents for the court's approval of the Settlement. Counsel's efforts prosecuting the case have produced substantial relief for the class through the negotiated Settlement. In sum, the court concludes, the class representatives and class counsel have represented the class adequately. The first Rule 23(e)(2) factor favors approving the Settlement.

*Second*, the court finds that the Settlement is the product of an arm's length negotiation. It emerged from informed, non-collusive, adversarial negotiations. The parties and their counsel were well-informed about the factual and legal issues involved in the case, and thoroughly litigated it for several months. A neutral mediator who is experienced in ERISA litigation facilitated the negotiations—taking place over several months. The second Rule 23(e)(2) factor also favors approval.

*Third*, the court finds the relief provided the class through the Settlement is adequate. Litigating this complex ERISA action through trial and appeal would involve significant additional costs, given the protracted nature of such cases. What's more, defendants vigorously dispute their liability, and the class's key allegations and actuarial evidence are novel. These circumstances present a risk that the class would secure delayed recovery or no recovery at all—both undesirable outcomes for the class. Class members will receive relief through increases to their future monthly benefit payments, eliminating the need for Class members to file claims and sustain other administrative obligations associated with a filing process. Only when both the participant Class member and the Class member's Associated Beneficiary are deceased will the participant's estate need to file a claim. In these circumstances, defendants will send notice of the Settlement to the participant's last known address and will distribute benefits following receipt of an estate claim form. The Settlement's design ensures Class members receive a

remedy that mirrors their alleged harms. And it allows them to start receiving that remedy swiftly in comparison to lengthy litigation. As discussed in more detail below, the requested attorneys' fees award is fair and adequate. There are no other agreements the court must consider under Rule 23(e)(2)(C)(iv). Thus, the third Rule 23(e)(2) factor favors approving the Settlement.

*Fourth*, the court finds that the Settlement treats Class members equitably. Each Class member will receive the same percentage of the present value of their benefits, even though the Class members will receive varying dollar amounts. The future benefit payment calculation also includes the value of past benefit payments plus interest. This calculation thus equitably provides for Class members who retired earlier in the class period or at an older age, who are likely to have fewer future benefits payments. So, the fourth Rule 23(e)(2) factor favors approval, too. In sum, all four Rule 23(e)(2) factors indicate a fair, reasonable, and adequate settlement.

Applying the Tenth Circuit's factors also favors approving the Settlement as fair, reasonable, and adequate. *First*, and as already discussed, the court finds that the Settlement "was fairly and honestly negotiated[.]" *Rutter*, 314 F.3d at 1188. *Second*, the litigation involves "serious questions of law and fact" and they place "the ultimate outcome of the litigation in doubt[.]" *Id.* Only a trial on the merits would answer the Class plaintiffs' key allegation—that the benefits provided to the class in their joint and survivor annuities were less than the actuarial equivalent of the single life annuities they could have selected otherwise. And the parties' sharp disagreement about liability reflects doubts about the ultimate outcome of the litigation. *Third*, "the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation[.]" *Id.* Class members will receive increased monthly benefit

payments almost immediately going forward, which is more valuable than the mere possibility of securing relief once this litigation runs its course. *Last*, Class plaintiffs ask the court—without objection from defendants—to approve the Settlement, reflecting "the judgment of the parties" that the Settlement "is fair and reasonable." *Id.* Thus, all four of our Circuit's factors also favor approving the Settlement.

So, the court finds the Settlement is fair, reasonable, and adequate. It thus grants final approval of the Settlement under Fed. R. Civ. P. 23(e).

3.      The Notice was sent to Class members "in a reasonable manner[,]" Fed. R. Civ. P. 23(e)(1)(B), and it notified Class members of the Settlement details and their right to object, *see* Doc. 41-2 at 11 (Settlement Agreement ¶ II.B.2); Doc. 43-1 at 1 (Palmen Decl. ¶ 4). The Notice apprised the Class members of further Settlement information available on the Settlement website. All Class members were afforded a full and fair opportunity to be heard on these matters. The form and means of disseminating Notice constituted the best notice practicable under the circumstances, including individual notice to all Class members who were identifiable through reasonable effort. *See DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (noting that for due process purposes, a district court should give "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort" (internal quotation omitted)); Fed. R. Civ. P. 23, Rules and Commentary (explaining that Rule 23(e)(1)(B) does not incorporate the "best notice that is practical requirement" of Rule 23(c)(2)(B), but "following the higher certification notice standard eliminates any question about whether the method of . . . notice was sufficient"). All but 20 notices were successfully delivered. *See* Doc. 43-1 at 1–2 (Palmen Decl. ¶¶ 6–8). The Plan's recordkeeper made reasonable efforts to re-send notices to the 20 Class members

whose first notices were returned as undeliverable. *Id.* No Class member validly objected to the putative Settlement. The Notice fully satisfied Rule 23 and the Due Process Clause of the United States Constitution.

4.     The court confirms the prior appointments of plaintiffs Kevin McFadden, David Schmidt, Peter Doncevic as class representatives, and the law firms of Izard, Kindall & Raabe, LLP and Foulston Siefkin LLP as class counsel.

5.     The motion also requests an attorneys' fees award of one-third of the Settlement amount, a class counsel expenses award of $25,926.01, and class representative service awards of $5,000 each. No Class member objected to these awards. As set forth below, the court grants the motion and awards the requested attorneys' fees and expenses. In contrast, the court finds that the total requested service award is unreasonable and orders a lesser award from the Settlement fund. The court explains each of these conclusions, below.

## AWARD OF ATTORNEYS' FEES

6.     Plaintiffs and class counsel moved for an award of attorneys' fees of one-third of the $3.5 million Settlement amount, which amounts to $1,166,666.67.

7.     Under Rule 23(h) of the Federal Rules of Civil Procedure, in "a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." The common fund doctrine and the parties' Settlement Agreement authorize the attorneys' fees requested and awarded here. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole."); *see also* Doc. 41-2 at 35 (Pl. Ex. 2) (providing that class counsel will seek an award "not to exceed 33 1/3% of the Settlement's $3.5 million present value").

8. This Settlement establishes a "common fund," though it comprises future benefit payments to the class. Other courts have used the common fund doctrine when awarding attorneys' fees from settlements involving payment of future benefits. *See, e.g.*, *Lucken Family Ltd. P'ship v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010) (approving settlement and awarding attorneys' fees where common fund included both initial payments and present value of future royalty payments by defendant); *Chieftain Royalty Co. v, QEP Energy Co.*, No. CIV-11-212-R, 2013 WL 12090676, at *1, *1 n.2 (W.D. Okla. May 31, 2013) (acknowledging that common fund included anticipated future benefits to class). The same's true here.

9. The Tenth Circuit prefers the percentage-of-the-fund method when determining the award of attorneys' fees in common fund cases. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458 (10th Cir. 2017) ("This court has approved both methods in common-fund cases, although expressing a preference for the percentage-of-the-fund approach."). This method calculates the fee as a reasonable percentage of the value attained for the benefit of the class. *See Brown v. Phillips Petrol. Co.*, 838 F.2d 451, 454 (10th Cir. 1988). The Tenth Circuit also has instructed that a court making a percentage fee award in a common fund case should analyze the reasonableness of the fee award under the *Johnson* factors. *See id.* at 454–55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The weight given to each *Johnson* factor varies from case to case, and each factor may not always apply. *See id.* at 456 (finding that "rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation").

10. The Tenth Circuit has identified the *Johnson* factors in this fashion:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results [secured]; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 454–55.

11. The court finds that the request for and award of attorneys' fees in the amount of one-third of the Settlement amount is reasonable under the *Johnson* factors. The court addresses each applicable factor, in order of importance, below.

12. **Amount Involved and Results Secured (Factor 8).** The court finds that the result factor here deserves greater weight than the other *Johnson* factors. *See id.* at 456 (holding a court may give this factor greater weight when "the recovery was highly contingent" and "efforts of counsel were instrumental in realizing recovery on behalf of the class"); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success [secured]." (citation and internal quotation marks omitted)). Here, the parties disputed the amount involved, both in liability and damages, and the case theory was novel on the merits. The resulting Settlement amount—with a present value of $3.5 million—is substantial, guaranteed, and non-reversionary. Class members will receive increased monthly benefit payments based on a formula outlined in the Settlement Agreement. Doc. 41-2 at 14 (Settlement Agreement ¶ III.B). According to the class representatives' actuarial expert, the Settlement Amount is about 36% of the full potential for class wide damages. Doc. 41 at 30; Doc. 41-1 at 4 (Izard Decl. ¶ 14). Other courts have approved ERISA class action settlements awarding class recovery of comparable proportions of estimated damages. *See, e.g.*, *Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,

-10-

No. 19-CV-0124-WJM-SKC, 2024 WL 98387, at *7 (D. Colo. Jan. 1, 2024) (approving an ERISA settlement where recovery was about 28% of estimated class wide damages); *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (approving an ERISA settlement recovery of $3.6 million, where class damages were expected to be as high as $111 million or as low as $7.5 million). The court finds that the result attained heavily favors awarding the one-third fee award.

13.     **Customary Fee (Factor 5) and Awards in Similar Cases (Factor 12).**  Class actions "typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel." *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015) (citation omitted). Our court consistently has recognized that a "one-third fee is customary in contingent-fee cases (factor 5)[.]" *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1113–14 (D. Kan. 2018). And it is "well within the range typically awarded in class actions." *Nieberding*, 129 F. Supp. 3d at 1250. In fact, in cases with increased complexity and risk, fee awards often exceed one-third of the common fund attained. *See Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029-DDC-GEB, 2019 WL 2185081, at *2–3 (D. Kan. May 21, 2019) (collecting cases approving fee awards in the Tenth Circuit based on 40% of the common fund). And in our court, an attorneys' fee award of one-third is consistent with fees awarded in other high-risk, complex class actions resulting in the creation of a common fund. *See, e.g.*, *Anderson v. Coca-Cola Bottlers' Ass'n*, No. 21-2054-JWL, 2023 WL 6064605, at *5–6 (D. Kan. Sept. 18, 2023) (one-third award given in ERISA class action); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. and Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2022 WL 2663873, at *4–5 (D. Kan. July 11, 2022) (awarding 33.33% attorneys' fees on a $264 million class recovery); *In re Syngenta*, 357 F.

Supp. 3d at 1113–14 (awarding 33.33% attorneys' fees on a $1.51 billion class recovery). As plaintiffs note, a one-third fee also comports with fees awarded by other courts in ERISA class actions. Doc. 41 at 32; *see also, e.g.*, *Cates v. Trs. of Columbia Univ.*, No. 16-CV-06524-GBD, 2021 WL 4847890, at *2 (S.D.N.Y. Oct. 18, 2021); *Pledger v. Reliance Tr. Co.*, No. 15-CV-4444-MHC, 2021 WL 2253497, at *6–8 (N.D. Ga. Mar. 8, 2021); *Sims v. BB&T Corp.*, No. 15-CV-732, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) ("A one-third fee is consistent with the market rate in complex ERISA matters such as this and reflects a customary fee for like work."). The court concludes that the requested fee of one-third is both customary and consistent with awards in similar cases, and thus supports a fee award of one-third of the Settlement amount.

        14.      **<u>Contingent Fee Arrangement (Factor 6) and Desirability (Factor 10)</u>.** The court recognizes the significant risk class counsel has assumed in prosecuting this complex ERISA case on a wholly contingent basis. They necessarily expended a large amount of time and money in nearly two years litigating this case. The case presented a significant risk of limited or no class recovery because resolution would "turn on the testimony of battling experts in arcane fields" to determine whether the joint and survivor annuity payments received by the class met the actuarial equivalent requirement under ERISA. *See* Doc. 41-1 at 10 (Izard Decl. ¶ 32). Where a class action presents the "risk [of] huge expenditures on a contingent basis, with a substantial risk of no recovery[,]" our court has held that the desirability factor supports a one-third fee award. *Syngenta*, 357 F. Supp. 3d at 1114. Continuing litigation could require class counsel to expend additional funds and risk the possibility that the class would make no recovery after a trial. The court finds that these factors, too, favor the fee award.

15.     **Novelty and Difficulty (Factor 2); Skill (Factor 3); and Experience (Factor 9).**
Class actions "have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). What's more, ERISA is "an enormously complex and detailed statute[.]" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). As already explained, this case presents a difficult dispute that no litigant has tested on its merits. *See* Doc. 41 at 26; Doc. 41-1 at 10 (Izard Decl. ¶ 32). Such complex litigation requires highly skilled and experienced counsel. *See Smith v. Krispy Kreme Doughnut Corp.*, No. 05CV00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("[I]t takes skilled counsel to manage a nationwide class action, carefully analyze the facts and legal claims and defenses under ERISA, and bring a complex case to the point at which settlement is a realistic possibility."); *see also In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1270 (D. Kan. 2006) (finding plaintiff's counsel "possessed the requisite level of experience, reputation, and ability in the field of ERISA class actions"). This court has previously recognized the need for additional skill where the defendant is represented by "large, sophisticated, and capable defense firms." *Bahnmaier v. Wichita State Univ.*, No. 20-cv-02246-JAR-TJJ, 2021 WL 3662875, at *3 (D. Kan. Aug. 18, 2021). This case required class counsel to file multiple complaints, conduct and respond to discovery, and engage in mediated settlement negotiations. Defendant is represented by two large, well-known defense firms, with experience defending ERISA class actions. *See* Doc. 41 at 34. The court finds that class counsel skillfully has performed the tasks required to prosecute this case, drawing on their experience and reputation in ERISA litigation. *See* Doc. 41-3 (Pl. Ex. B); Doc. 38-2 (Nehrbass Decl.). These factors strongly support the requested fee, as well.

16.     **Time and Labor (Factor 1).** This factor guides the lodestar analysis in a statutory fee-shifting case but has minimal importance in a percentage-of-the-common-fund

case. *See Nakamura*, 2019 WL 2185081, at *3. In fact, a lodestar analysis (or crosscheck) is neither required nor needed to assess the reasonableness in a percentage of the fund determination. *See id.* (first citing *Brown*, 838 F.2d at 456, 456 n.3; then citing *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018) (neither lodestar analysis nor lodestar cross-check is required); and then citing *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *15 n.10 (N.D. Okla. Dec. 2, 2011) ("Because the other *Johnson* factors, combined, warrant approval of the common fund fee sought by class counsel, the Court need not engage in a detailed, lodestar-type analysis of the 'time and labor required' factor.")).

Still, this was not a case that settled before counsel completed significant work to prosecute the claims. To the contrary, class counsel at Izard, Kindall & Raabe, LLP devoted 618 hours of time and labor to this litigation.[5] Doc. 41-1 at 12 (Izard Decl. ¶ 39). And class counsel at Foulston Siefkin, LLP devoted 70.7 hours to the case as Kansas counsel. Doc. 38-2 at 5 (Nehrbass Decl. ¶ 23). Class counsel assured the court that the firms' time and expenses were reviewed and deemed necessary to prosecute this action effectively. *See* Doc. 41-1 at 12 (Izard Decl. ¶¶ 37–38); Doc. 38-2 at 5 (Nehrbass Decl. ¶¶ 21–22). Thus, the court finds, the time and labor factor, to the extent this factor is relevant in a percentage-of-the-fund case, favors awarding a one-third fee.

17. **<u>Preclusion of Other Employment (Factor 4)</u>.** "When 'an attorney is spending time on one case, he is not spending the same time on another case.'" *In re EpiPen*, 2022 WL 2663873, at *6 (quoting *Wiggins v. Roberts*, 551 F. Supp. 57, 61 (N.D. Ala. 1982)). Counsel

---

[5] Note that class counsel represented that they had committed 618 hours to this case and expended $25,322.31 as of "June 24, 2004." Doc. 41-1 at 12 (Izard Decl. ¶¶ 38–39). The court recognizes these dates as an evident drafting error and assumes class counsel meant to refer to the date when they filed the motion, June 24, 2024. *See* Doc. 41 at 35.

have represented the amount of time and labor dedicated to this case over the last two years. The time spent on this case suggests counsel rejected other employment opportunities in favor of devoting time here. The court concludes that this factor supports the requested one-third fee.

18. The other two *Johnson* factors—time limitations imposed by the client or circumstances (Factor 7) and nature and length of the professional relationship with the client (Factor 11)—are of nominal or no importance in the analysis here. The court thus doesn't address them.

19. For all these reasons, the court concludes that the *Johnson* factors strongly support and warrant an award of attorneys' fees in the amount of one-third of the $3.5 million Settlement amount. The court awards attorneys' fees from the Settlement fund of $1,166,666.67.

## AWARD OF LITIGATION EXPENSES

20. Rule 23(h) authorizes courts to reimburse counsel for "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Settlement Agreement authorizes class counsel to seek "reimbursement of litigation expenses and costs" which will "reduce the present value of the Settlement amount to be paid to Class members in the form of annuity payments." Doc. 41-2 at 12 (Settlement Agreement ¶ II.E).

21. Class counsel have incurred $25,926.01 in total expenses and costs in prosecuting this case. Counsel at Izard, Kimball & Raabe reported expenses of $25,322.31, Doc. 41-1 at 12 (Izard Decl. ¶ 40), and counsel at Foulston Siefkin reported expenses of $603.70, Doc. 38-2 at 5 (Nehrbass Decl. ¶ 23). No Class member has objected validly to the award of these expenses from the Settlement fund. Class counsel represented the expenses incurred were necessary to litigate this case effectively and were the type counsel normally would charge a paying client. Doc. 38-1 at 11 (Izard Decl. ¶ 33). The court finds that the award of these expenses is fair and

reasonable, and the court approves of payment pursuant to the Settlement Agreement.

## AWARD OF SERVICE AWARDS

22. "At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class." 5 Newberg and Rubenstein on Class Actions § 17:1 (6th ed. 2021). "Service payments induce individuals to become class representatives and reward them for time sacrificed and personal risk incurred on behalf of the class." *Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV, 2018 WL 2568044, at *7 (D. Kan. June 4, 2018) (citing *UFCW Loc. 880-Retail Food Emp. Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235 (10th Cir. 2009)). Our Circuit has directed district courts to make incentive awards proportional to each class representative's contribution. *Chieftain*, 888 F.3d at 468.

23. Class counsel have requested that the court award $5,000 service awards to all three class representatives based on the time they devoted to representing the class. Together this amounts to $15,000, which is .4% of the $3.5 million Settlement amount.

24. Class representatives searched for and provided documents related to their involvement in the Plan, communicated with class counsel throughout the litigation, and consulted with class counsel during the Settlement negotiations. Doc. 41 at 36.

25. Plaintiff McFadden devoted at least 60 hours to the case. Doc. 41 at 37; Doc. 41-4 (McFadden Decl. ¶ 3). Plaintiff Schmidt devoted at least 30 hours to the case. Doc. 41 at 37; Doc. 41-6 (Schmidt Decl. ¶ 3). And plaintiff Doncevic devoted at least 50 hours to the case. Doc. 41 at 37; Doc. 41-5 (Doncevic Decl. ¶ 3).

26. At the August 8, 2024, final approval hearing, the court asked a series of questions about plaintiffs' requested service awards. Specifically, the court asked why all three

class representatives—despite having contributed differing amounts of time to the case—requested $5,000. Class counsel correctly acknowledged that incentive awards in class action settlements vary widely, which gives the court several options in assessing a service award's reasonableness.

27. Our court has granted service awards averaging $150 per hour in an ERISA class action in 2023. *Anderson*, 2023 WL 6064605, at *6. Combining the number of hours spent by class representatives in this case, a $15,000 total award would provide class representatives with about $107 per hour, on average. Our court also has taken a scaled approach to service awards. *See In re EpiPen*, 2022 WL 2663873, at *7 (awarding class representatives working 60+ hours a $5,000 service award and class representatives working less than 60 hours an award of $79 per hour).

28. The court finds that a rate of $100 per hour is reasonable. The court concludes such an award is appropriate, considering: the total number of hours plaintiffs contributed; the total service award requested here; the complexity of an ERISA class action; inflation since the *EpiPen* settlement; and the lack of Class objections to the service award. So, the court awards plaintiff Schmidt $3,000 for his 30 hours of work and plaintiff Doncevic $5,000 for his 50 hours of work. The Class members' expected that no service award would exceed $5,000, based on the notice of Settlement provided. *See* Doc. 41-2 at 35 (Pl. Ex. 2). Thus, the court awards plaintiff McFadden a $5,000 service award.

## **CONCLUSION**

29. Class counsel shall receive the awarded attorneys' fees and expenses according to the Settlement Agreement. The court directs class counsel to allocate and distribute the attorneys' fees and expenses awarded among themselves, using their judgment to compensate

each counsel fairly based on how each one contributed to the litigation.

30. The court expressly incorporates the releases as set forth in Section IV of the Settlement Agreement, together with the definitions in Section I of the Settlement Agreement. The court approves the release provisions in Section IV of the Settlement Agreement. The Class members and the Plan shall, by operation of the Judgment, fully, finally, and forever release, relinquish, and discharge all released claims against the Released Parties. *See* Doc. 41-2 at 15–16 (Settlement Agreement ¶ IV).

31. The court acknowledges that defendants have noticed all appropriate federal and state officials regarding the Settlement as required by 28 U.S.C. § 1715. Doc. 41 at 10.

32. The Judgment is final and appealable.

33. In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Settlement Agreement, this Order shall will become null and void to the extent provided in the Settlement Agreement and vacated in accordance with the Settlement Agreement.

34. The parties may agree to reasonable extensions of time to carry out the obligations of the Settlement Agreement, subject, however, to approval by the court.[6]

35. The court retains jurisdiction, to the extent permitted by law, over matters that are the subject of this Order until after full disbursement of the Settlement, and as necessary to effectuate the terms of the Settlement Agreement relating to attorneys' fees, expenses, and service awards.

**IT IS SO ORDERED**.

---

[6] The court realizes that the parties' proposed order contemplated that parties could extend deadlines without court approval. *See* Doc. 42-1 at 6. But the parties' Settlement Agreement provided that any such extensions would require court approval. *See* Doc. 41-2 at 20 (Settlement Agreement ¶ IV.P). The court, by this Order, adopts the more restrictive alternative.

-19-

**Dated this 20th day of August, 2024, at Kansas City, Kansas.**

                                              **s/ Daniel D. Crabtree**
                                              **Daniel D. Crabtree**
                                              **United States District Judge**